## SMITH v. WHITMAN SADDLE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

No. 188. Argued and submitted March 28, 1893. — Decided April 17, 1893.

Where a new and original shape or configuration of an article of manufacture is claimed in a patent issued under Rev. Stat. § 4929, its utility is an element for consideration in determining the validity of the patent. *Gorham Manufacturing Co. v. White,* 14 Wall. 511, distinguished.

The test of identity of design in the invention covered by such a patent is the sameness of appearance to the eye of an ordinary observer.

The saddle, the design for which is protected by letters patent No. 10,844, issued September 24, 1878, to Royal E. Whitman for an improved design for saddles, was made by taking the front half of a saddle previously

known as the Granger tree, and the rear half of a saddle known as the Jenifer or Jenifer-McClellan ·saddle, changing the Granger tree part so as to have a perpendicular drop of some inches at the rear of the pommel.

In view of this previous condition of the art, the .new and material thing protected by those letters patent was the sharp drop of the pommel at the rear, and they were not infringed by the saddles constructed by the plaintiffs in error.

THE ·Whitman Saddle Company, a corporation organized and existing under and by virtue of the laws of the State of New York, brought this bill of complaint in the Circuit Court of the United States for the district of Connecticut, against Charles D. Smith and Benjamin A. Bourn, citizens of the State of Connecticut, and doing business in the city of Hartford, under the firm name and style of Smith, Bourn & Co., for the alleged infringement of a patent for a "design for saddles," No. 10,844, dated September 24, 1878.

The Circuit Court sustained the patent, adjudged that complainant was entitled to recover of the defendants as infringers, and rendered a decree perpetually enjoining them, and for an amount found due for profits, costs, charges and disbursements, from which decree an appeal was taken to this court. The opinion of Judge Shipman is reported in 38 Fed. Rep. 414.

The specification and claim are as follows:

" Be it known that I, Royal E. Whitman, of Springfield, Hampden County, State of Massachusetts, have invented an improved design for saddles, of which the following is a specification:

" The nature of my design is fully illustrated in the accompanying photographic picture, to which reference is made.

" Figure 1 is a side profile view, and Fig. 2 a partial front view.

" The pommel B rises at the fork to a point on, or nearly on, a horizontal level with the raised and prolonged cantle. The pommel on its rear side falls nearly perpendicularly for some inches, when it is joined by the line forming the profile of the seat. The straight inner side of the pommel (marked *b*) is joined at *c* by the line C of the seat. The line C de-

scribes a gradual curve to the centre of the seat, from thence gradually rising to the highest point of the cantle D. The cantle is defined in side profile by the lines *ef*, starting from its outer end in continuous curves, which separate to define the thickness of the cantle before uniting at a point *g*, near the centre of the saddle, the line *f* forming the outside and rear edge of the saddle until joined by the line *h*, which, leaving the line *f* at an angle, bends to form the rear bearing of the saddle. The line from the front of the pommel B inclines outward for some distance in a nearly straight line, *m*, before being rounded toward the rear to join the line *h*, at the point where the stirrup-strap is attached, to thus define the bottom line of the saddle, the outline given by line *m* from the pommel being the general form of the English saddle-tree known as the ' cut-back.'

" A plan view of the saddle shows a centre longitudinal slot extending from pommel to cantle.

" I am aware that portions of the curves employed by me have been used in the designing of saddles ; but, when combined with a longitudinally-slotted tree, the lines I employ to give the profile form a new design for saddles, and giving the general idea in the front, lower and rear lines of a sea-fowl or vessel modelled upon the same curves, and by these curves and lines giving the impression of lightness, grace and comfort that could not as well be conveyed by any others, as the impression of comfort is given by the large amount of bearing-surface obtained without undue elevation above the back of the animal, combined with the large seat for the rider, and lightness and grace by the small surface of tree shown in vertical plan, coupled with the form in which it is presented.

" Now, having described my invention, what I claim is —

" The design for a riding saddle, substantially as shown and described."

The following is the picture referred to :

*Mr. W. E. Simonds* for appellant.

*Mr. Samuel A. Duncan* for appellee submitted on his brief.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court:

Section 4929 of the Revised Statutes provides that: "Any person who, by his own industry, genius, efforts and expense, has invented and produced any new and original design for a manufacture, bust, statue, alto-relievo or bas-relief; any new and original design for the printing of woollen, silk, cotton or other fabrics; any new and original impression, ornament, pattern, print or picture to be printed, painted, cast or otherwise placed on or worked into any article of manufacture; or any new, useful and original shape or configuration of any article of manufacture, the same not having been known or used by others before his invention or production thereof, or patented or described in any printed publication, may, upon

payment of the fee prescribed and other due proceedings had, the same as in cases of inventions or discoveries, obtain a patent therefor."

The first three of these classes plainly refer to ornament, or to ornament and utility, and the last to new shapes or forms of manufactured articles; and it is under the latter clause that this patent was granted.

In *Gorham Manufacturing Co.* v. *White*, 14 Wall. 511, 524, it was said by this court, speaking through Mr. Justice Strong, that the acts of Congress authorizing the granting of patents for designs contemplated " not so much utility as appearance, and that, not an abstract impression, or picture, but an aspect given to those objects mentioned in the acts. . . . And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form. The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public. It, therefore, proposes to secure for a limited time to the ingenious producer of those appearances the advantages flowing from them. Manifestly the mode in which those appearances are produced has very little, if anything, to do with giving increased salableness to the article. It is the appearance itself which attracts attention and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense." This language was used in reference to ornamentation merely, and moreover the word " useful," which is in section 4929, was not contained in the act of 1842, under which the patent in *Gorham Co.* v. *White,* was granted. So that now where a new and original shape or configuration of an article of manufacture is claimed, its utility may be also an element for consideration. *Lehnbeuter* v. *Holthaus,* 105 U. S. 94.

But as remarked by Mr. Justice Brown, then District Judge for the Eastern District of Michigan, in *Northrup* v. *Adams*, 12 O. G. 430, and 2 Bann. & Ard. 567, 568, which was a bill for the infringement of a design patent for a cheese safe, the law applicable to design patents "does not materially differ from that in cases of mechanical patents, and 'all the regulations and provisions which apply to the obtaining or protection of patents for inventions or discoveries . . . shall apply to patents for designs.' (Sec. 4933.)" And he added: "To entitle a party to the benefit of the act, in either case, there must be originality, and the exercise of the inventive faculty. In the one, there must be novelty and utility; in the other, originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius — an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful or beautiful they may be in their new role, is not invention." Many illustrations are referred to, as, for instance, the use of a model of the Centennial Building for paper weights and ink stands; the thrusting of a gas-pipe through the leg and arm of the statue of a shepherd boy, for the purpose of a drop light; the painting upon a familiar vase of a copy of Stuart's portrait of Washington — none of which were patentable, because the elements of the combination were old. The shape produced must be the result of industry, effort, genius or expense, and new and original as applied to articles of manufacture. *Foster* v. *Crossin*, 44 Fed. Rep. 62. The exercise of the inventive or originative faculty is required, and a person cannot be permitted to select an existing form and simply put it to a new use any more than he can be permitted to take a patent for the mere double use of a machine. If, however, the selection and adaptation of an existing form is more than the exercise of the imitative faculty and the result is in effect a new creation, the design may be patentable.

In *Jennings* v. *Kibbe*, 10 Fed. Rep. 669, and 20 Blatchford, 353, Mr. Justice Blatchford, when Circuit Judge, applied the rule laid down in *Gorham Manufacturing Co.* v. *White, supra*, stating it thus, that "the true test of identity of design is

sameness of appearance, — in other words, sameness of effect upon the eye; that it is not necessary that the appearance should be the same to the eye of an expert, and that the test is the eye of an ordinary observer, the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." *Ripley* v. *Elson Glass Co.*, 49 Fed. Rep. 927.

In this case it appeared from the evidence that among other trees and saddles that were old in the prior art was one called the Granger tree, which had a cut-back pommel and a low, broad cantle, and was well known; and another called the Jenifer tree or Jenifer-McClellan saddle, which was also well known, and had a high, prominent pommel and a high-backed cantle, or hind protuberance, in the shape of a duck's tail.

The exhibits embrace, among others, a slotted Granger saddle, the Jenifer-McClellan, the Sullivan-Black-Granger tree, and the saddle sold by the defendants, the latter being substantially the Granger saddle with the Jenifer cantle.

The saddle design described in the specification differs from the Granger saddle in the substitution of the Jenifer cantle for the low, broad cantle of the Granger tree. In other words, the front half of the Granger and the rear half of the Jenifer, or Jenifer-McClellan, make up the saddle in question, though it differs also from the Granger saddle in that it has a nearly perpendicular drop of some inches at the rear of the pommel, that is, distinctly more of a drop than the Granger saddle had.

The experienced judge by whom this case was decided conceded that the design of the patent in question did show prominent features of the Granger and Jenifer saddles, and united two halves of old trees, but he said: "A mechanic may take the legs of one stove, and the cap of another, and the door of another, and make a new design which has no element of invention; but it does not follow that the result of the thought of a mechanic who has fused together two diverse shapes, which were made upon different principles, so that new lines and curves and a harmonious and novel whole are

produced, which possesses a new grace and which has a utility resultant from the new shape, exhibits no invention." And he held that this was effected by the patentee and that the shape that he produced was, therefore, patentable. But we cannot concur in this view.

The evidence established that there were several hundred styles of saddles or saddle-trees belonging to the prior art, and that it was customary for saddlers to vary the shape and appearance of saddle-trees in numerous ways according to the taste and fancy of the purchaser. And there was evidence tending to show that the Granger tree was sometimes made up with an open slot and sometimes without, and sometimes with the slot covered and padded at the top and sometimes covered with plain leather; while it clearly appeared that the Jenifer cantle was used upon a variety of saddles, as was the open slot. Nothing more was done in this instance (except as hereafter noted) than to put the two halves of these saddles together in the exercise of the ordinary skill of workmen of the trade, and in the way and manner ordinarily done. The presence or the absence of the central open slot was not material, and we do not think that the addition of a known cantle to a known saddle, in view of the fact that such use of the cantle was common, in itself involved genius or invention, or produced a patentable design. There was, however, a difference between the pommel of this saddle and the pommel of the Granger saddle, namely, the drop at the rear of the pommel, which is thus described in the specification: "The pommel, on its rear side, falls nearly perpendicularly for some inches, when it is joined by the line forming the profile of the seat. The straight inner side of the pommel (marked *b*) is joined at *c* by the line C of the seat." The specification further states : "The line from the front of the pommel B inclines outward for some distance in a nearly straight line, *m*, before being rounded toward the rear to join the line *h*, at the point where the stirrup-strap is attached, to thus define the bottom line of the saddle, the outline given by line *m* from the pommel being the general form of the English saddle-tree known as the 'cut-back.' "

The shape of the front end being old, the sharp drop of the pommel at the rear seems to constitute what was new and to be material. Now, the saddles of the defendants, while they have the slight curved drop at the rear of the pommel, similar to the Granger saddle, do not have the accentuated drop of the patent, which "falls nearly perpendicularly several inches," and has a "straight inner side." If, therefore, this drop were material to the design, and rendered it patentable as a complete and integral whole, there was no infringement. As before said, the design of the patent had two features of difference as compared with the Granger saddle, one the cantle, the other the drop. And unless there was infringement as to the latter there was none at all, since the saddle design of the patent does not otherwise differ from the old saddle with the old cantle added, an addition frequently made. Moreover, that difference was so marked that in our judgment the defendants' saddle could not be mistaken for the saddle of the complainant.

There being no infringement the decree must be reversed and the cause remanded, with a direction to dismiss the bill, and it is

*So ordered.*