ECLIPSE MANUF'G CO. v. HOLLAND.

(Circuit Court, N. D. New York. July 20, 1894.)

**1.** DESIGN PATENTS--LIMITATION BY PRIOR ART.
    After one has painted a design, another cannot have a valid patent for merely embossing the same design upon a similar object.

**2.** SAME—INFRINGEMENT.
    The Prentice design patent, No. 17,270, for a design for radiators, if valid at all, in view of prior designs, must be limited to the precise drawing shown, and, being so limited, is not infringed by a radiator differing in size, shape, and depth, so that an ordinary purchaser, looking for the specific design of the patent, could hardly be deceived.

This was a suit by the Eclipse Manufacturing Company against Holland for infringement of a design patent. On final hearing.

P. C. Dyrenforth, for complainant.
E. S. Jenney and George H. Lothrop, for defendant.

COXE, District Judge. This is an equity action based upon letters patent No. 17,270, granted to Leon H. Prentice April 19, 1887, for a design for a radiator. The patent has been three times before the courts. On demurrer and final hearing in the northern district of Illinois and on motion for an injunction in the eastern district of Michigan. In the Illinois case the material portions of the patent, and of the patent law, are set out in full and facts are stated which bear more or less directly upon the present contro-

versy. All this it will be unnecessary to repeat. When the patent was first before the court the learned judge in overruling the demurrer said:

"The patent now under consideration is for a design by which the surface of a radiator is to be divided by a horizontal line into two rectangular spaces, and one of them—that is, either the upper or lower of these spaces—ornamented with figures, which may be produced by embossing or depressing upon the surface, or perhaps by painting. This certainly strikes me at first impression as a very close, if not doubtful, patent. I cannot, however, say from my own knowledge, or from any familiarity with radiators in common use, that it is not new. * .* * As to the point that this patent is void because it does not describe the kind of figures, I can only say that I, at present, am of opinion that if this patentee was the first to invent or produce an ornamental radiator, that is, the first to design a radiator with an upper or lower rectangular space ornamented by figures of any kind upon it, then he may be entitled to a patent for such a design. It may not have required a very high order of genius or inventive talent to have conceived and produced such a design, or if it was new, if it originated with him, then I cannot on this demurrer say his patent is invalid. I have nothing at present before me from which I can say that it did not require study, thought and inventive talent to produce this design." Eclipse Manuf'g Co. v. Adkins, 36 Fed. 554.

When the cause came on for final hearing it was, so far as the prior art was concerned, in the same condition as on demurrer. No evidence, certainly no legal evidence, was introduced which in any way limited the field of invention. So far as appeared Prentice was the first to ornament a radiator as described. No one before him had done anything which affected his design in the remotest degree. Naturally, therefore, the patent was sustained and a broad construction was placed upon it. The court says:

"It will be seen that this patent is not for any specific form of ornamentation. It does not describe what the ornamentation shall consist of further than to say in the specifications that the patentee prefers 'embossed or depressed ornamentation,' but what kind of ornamentation it shall be, whether a Greek pattern of lines, or a leaf, or a vine, or scroll, or any other embossed or sunken figures, is not indicated. The sole scope of the patent is the idea of ornamenting the upper or lower portion of the pipes of a radiator to a uniform height, so that it will present ornamented and plain parallelograms, in contrast. As to the claim that Prentice was not the first to conceive the idea of thus ornamenting a radiator, there is no proof on the part of the defendant which shows that any person had preceded him in this field. * * * It will be noticed that Mr. Prentice does not claim to have been the inventor of the radiator or the radiator pipes. He simply claims his patent for the idea of ornamenting a portion of the pipes, instead of leaving them entirely with plain surfaces, and for putting this ornamentation of uniform height on each pipe, so that the radiator would show an ornamented parallelogram and a plain parallelogram, in contrast. * * * I am of the opinion that the design covered by this patent comes within the first clause of section 4929, Rev. St., as a 'manufacture,' rather than within the third clause as an 'original impression, ornament,' etc., as is insisted by the complainant's counsel. * * * I am of opinion that the patent should be upheld, and there can be no doubt, from an inspection of the defendants' radiators, which are introduced in evidence, that the defendants infringe the patent by ornamenting their radiators for a uniform distance from the top downward, so as to show an ornamented rectangular parallelogram, and an unornamented rectangular parallelogram, one above the other." 44 Fed. 280.

Were the case here on the same proof I should not hesitate to follow this decision, first, because it is entitled to great weight as an

authority; and, second, because I think it was right. A different conclusion would have been at variance with the proofs then before the court. When the motion for a preliminary injunction came on for hearing in the Michigan district the defendant presented several prior structures which, concededly, limit the theater of invention and render a broad construction of the patent untenable. The proof now is substantially similar to that presented in the Michigan cause. The anticipating devices relied on are the same. That case comes much nearer, therefore, to being a precedent than the Illinois case. The decision refusing the injunction was delivered orally and has not been reported. There is some disagreement between counsel as to the ground upon which the court based the decision. There is no question, however, that the court expressed grave doubt as to the validity of the patent. There is no doubt that the motion was denied.

It now appears that the form of the radiator was old, the same being shown in the patent to Rodier and in the Billings and Thompson exhibits. It was old at the date of the patent to cast radiator pipes with embossed ornamentation thereon. The Adams radiator (1880) is composed of three sections of uniform height with embossed figures on the upper field and with the lower field, comparatively, plain. Shackleton (1881) shows the idea of ornamenting an upper triangular section of a radiator. The Billings radiator (1884) is divided by paint into rectangular sections, the lower section being ornamented at its upper edge. The Thompson radiator (1886) shows a lower rectangle and two triangular sections above it. These are also made by painting. The general conformation of both the Billings and Thompson radiators is almost precisely similar to the Prentice radiator. The patent to Arci and Chapman (1884) shows a steam radiator made like a pillar, the shaft being plain and the capital ornamented. When the pipes are assembled in the radiator there must be an ornamented field above a comparatively plain field. All of these present clearly the contrast between upper and lower rectangles. Thompson and Billings show this contrast by painting the sections in different colors, Adams, Arci and Shackleton show it chiefly by embossed work, or similar ornamentation, cast into the iron. The foregoing are the best references offered by the defendant. As I understand the complainant's brief and the position taken by its expert it is admitted that if the construction placed upon the patent in the Adkins Case is adhered to the patent is void in view of what now appears of the prior art. But it is contended that the patent may be upheld if confined to the precise design shown in the drawing. It is argued that it should be held to cover a loop radiator, "having ornamented figures formed in the iron extending over the crowns and down both ways for a uniform distance, leaving a plain field below." Assuming such a construction admissible, it remains to be seen whether the patent can be upheld even if so limited. The Billings radiator unquestionably presents two contrasting rectangular surfaces. It is true that neither of these surfaces is embossed. The contrast is presented by painting and not embossing. But this conception

of contrasting two rectangles is plainly the underlying idea of the Prentice patent. The court was clearly correct in holding, in the Adkins Case, that "the scope of the patent is the idea of ornamenting the upper or lower portion of the pipes of a radiator to a uniform height, so that it will present ornamented and plain parallelograms in contrast." The Billings radiator certainly does this. It is thus described by the defendant's expert:.

"The nearest approach to a radiator answering each of those requirements is the Billings radiator, which is made up of the same sort of loops, arranged the same way, and which has its end loops ornamented alike on the front and rear member of each, and in which the top ornamentation extends on the end loops down both sides for a uniform distance, with plain fields below, but the top ornamentation is not figured ornamentation in relief."

Can there be any doubt that the Billings radiator contains the fundamental idea of the Prentice patent? The question then, bluntly stated, is this: After one person has painted a design can another have a patent who simply embosses the old design upon a similar object? Manifestly not. There can be no doubt, after reading the patent, that Prentice believed that his invention consisted chiefly in this feature of contrasting rectangles, the one ornamented, the other plain. It is evident that he regarded the transposition of the rectangles and the character and form of the ornamentation as mere incidents which would naturally occur to any one skilled in the art after the supposed new departure in the decoration of radiators had been disclosed by him. In other words, he would have maintained, had the Billings radiator been made after his own, that it infringed his patent. He would have insisted that as he had pointed out the principal idea underlying the design it required no inventive talent to paint on the lower section of the radiator what he had shown as embossed on the upper section. If the Prentice radiator would suggest the Billings radiator why is not the converse true? How can it be said that it required an exercise of the inventive faculty to emboss the patterns on the Billings radiator as they now appear, or to transpose the lower pattern to the crown of the radiator, emboss it there, and leave the lower section plain? Would not the substitution of embossing for painting, and vice versa, occur to any one interested in the art? Would not an ordinary decorator, having seen the Billings radiator, together with the exhibits showing embossed work in connection with this art, know enough to produce the Prentice radiator?

In Smith v. Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, the court, at page 679, 148 U. S., and page 768, 13 Sup. Ct., says:

"The exercise of the inventive or originative faculty is required, and a person cannot be permitted to select an existing form and simply put it to a new use any more than he can be permitted to take a patent for a mere double use of a machine. If, however, the selection and adaptation of an existing form is more than the exercise of the imitative faculty and the result is in effect a new creation the design may be patentable."

It is plain that the patent if it can be upheld must be confined to the design precisely as it is shown in the drawing, and so con-

strued the defendant does not infringe. His radiator differs in size, shape and depth. It is more open, it has "a large pipe-like effect at the top" and it is round at the bottom instead of being "sawed off" like the Prentice radiator. The shape of the loops is different, the embossed pattern is different and the bottom, instead of being left plain is ornamented like the top. Instead of two contrasting fields there are three—an upper and a lower ornamented section and a plain section between them. An ordinary purchaser, looking for the specific design of the Prentice patent, could hardly be deceived.

The bill is dismissed.