**EDISON ELECTRIC APPLIANCE CO., Inc., v. FITZGERALD MFG. CO.**

District Court, D. Connecticut. July 24, 1928.

No. 1865.

A. D. Salinger, of Boston, Mass., for plaintiff.

Charles L. Sturtevant, of Washington, D. C., for defendant.

THOMAS, District Judge. ⬛ On October 24, 1922, the Patent Office issued to C. P. Randolph a design patent on an electric waffle iron, upon an application filed March 13, 1922. This patent was assigned to the plaintiff corporation which brings this suit and charges the defendant with infringement. The defenses are invalidity and noninfringement, if the patent is held to be valid.

The patent contains no written description or specification of the invention, but merely states that reference is had to the drawing in which is presented a perspective view of a waffle iron showing the design. The claim is for "the ornamental design for a waffle iron, as shown." The patentee simply asserts that he has "invented a new original and ornamental design for a waffle iron." This assertion the defendant denies because of lack of invention over the prior art.

The waffle iron shown in the drawing of the patent in suit embodies three main parts: (1) The waffle iron proper—where the batter is baked; (2) a short pedestal supporting the baking members; and (3) a lower plate or base larger in diameter than the heating sections, and all three members constitute one unit or utensil. In addition, there are two openings for the electrical connections for heating the upper and lower baking irons and a handle with which to lift and lower the top grid.

The prior art relied upon by defendant at trial consists of three mechanical patents, two design patents, and four catalogues, and these will be discussed in their order. The Selden & Griswold patent, No. 229,280, issued June 29, 1880, shows an old-fashioned flat waffle iron for use on a stove, with no pedestal or base. The Kuhn patent, No. 929,095, issued July 27, 1909, is called an "electric heater," and the patentee says it is particularly adapted for use as a hot plate. There is nothing in this patent to suggest a waffle iron supported by a pedestal or a base attached thereto. The Smith patent, No. 1,559,012, was issued October 27, 1925, on an application filed March 24, 1922. Plaintiff's application was filed March 13, 1922. If the Smith patent is considered prior art in view of Mr. FitzGerald's testimony, supported as he is by invoices and book records which show dates anterior to the filing date of the patent in suit, this patent shows only a round electric waffle iron supported by three legs, with a bail or handle attached which is the important feature of the patent. In the specification the patentee says that the invention relates more particularly to an improved handle for a waffle iron, and that the shifting handle may be connected permanently to one of the heating sections, and that it is designed to either lock rigidly with the upper heating section for opening the waffle iron or to lock rigidly with the lower heating section, so that the waffle iron can be lifted as a whole for transporting it from place to place. Thus it appears that there is nothing in the Smith patent to suggest plaintiff's design, except that the baking iron or heating section is round—but a round baking iron is shown in the Selden & Griswold patent of 1880. The Smith patent shows no pedestal—it shows no base, but it has three legs supporting the heating sections, and they rest on a separate tray.

In the design patent to Swan, No. 41,717, as well as in the design patent to Farr, both of which are for ornamental designs for a chafing dish, there is nothing shown except two different designs for a plain chafing dish or stewing utensil. Their bottoms are flat, and there is no base or pedestal of any kind shown or suggested. Then there are the Landers, Frary & Clark catalogues—one published in 1915 and the other in 1916, the C. S. Mersick Company catalogue published in 1916, the Western Electric year book published in 1918, and the Wetmore & Savage

Company catalogue published in 1921. The Landers, Frary & Clark catalogues show a number of chafing dishes, in none of which, however, does the dish-like member with its cover present the same appearance as the two halves of plaintiff's waffle iron, and in none of which is there an extended pedestal and base supporting member which is made up so as to be a unitary structure. There is nothing in any of the other catalogues which requires consideration or which approximates the design of the patent in suit except the "glowing coil stove" found on page 515 of the C. S. Mersick Company catalogue issued in 1916, and from all of the prior art this device is the nearest reference.

This is an electric grill integral with a pedestal and lower plate but of less diameter than the grill. True the baking iron of the patent in suit, as defendant demonstrates, is easily superimposed upon the grill part of the "stove," but I conclude that this is hardly sufficient to defeat the patent because the "glowing coil stove" is not a waffle iron, and of course differs very materially from a waffle iron, and could not anticipate the design of the patent in suit. It is true that, if the stove part was entirely removed, and a round waffle iron substituted, and if the base was made of larger diameter than the supported utensil instead of less diameter, than we would have the plaintiff's design as Randolph, the patentee, admitted, concerning whose testimony in this connection the defendant places much importance. But those conditions do not exist, and so I conclude that, while this exhibit approaches the Randolph design, it does not anticipate, especially when we consider the law applicable to such matters which will be hereinafter set forth.

While there is nothing in the prior art which shows a waffle iron structure resembling plaintiff's design, and none of the patents or catalogues show a structure or utensil of any kind which presents the appearance of plaintiff's waffle iron, yet the defendant claims that the elements which make up plaintiff's iron are all old, and are shown here and there in the prior art, and that the plaintiff's design is nothing but a combination of elements which were old in various devices to be found in the electrical appliance art. In view of this, defendant asserts that the plaintiff does not bring itself within the rule that to be entitled to a design patent there must be invention present the same as in a mechanical patent. This question of law is fully discussed in Smith v. Whitman Saddle Co., 148 U. S. 674, 13 S. Ct. 768, 37

L. Ed. 606, and Chief Justice Fuller, speaking for the Supreme Court, said on page 679 (13 S. Ct. 770):

"But as remarked by Mr. Justice Brown, * * * the law applicable to design patents 'does not materially differ from that in cases of mechanical patents, and "all the regulations and provisions which apply to the obtaining or protection of patents for inventions or discoveries * * * shall apply to patents for designs." (Section 4933 [35 USCA § 73]).' And he added: 'To entitle a party to the benefit of the Act, in either case, there must be originality, and the exercise of the inventive faculty. In the one, there must be novelty and utility; in the other, originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful or beautiful they may be in their new role, is not invention.' * * *

"* * * The shape produced must be the result of industry, effort, genius or expense, and new and original as applied to articles of manufacture. Foster v. Crossin [C. C.] 44 F. 62. The exercise of the inventive or originative faculty is required, and a person cannot be permitted to select an existing form and simply put it to a new use any more that he can be permitted to take a patent for the mere double use of a machine. If, however, the selection and adaptation of an existing form is more than the exercise of the imitative faculty and the result is in effect a new creation, the design may be patentable."

Tested by these observations, it seems to me that the selection and adaptation of the design in suit shows more than the exercise of the imitative faculty, and the result is in effect a new creation, and hence patentable.

What the Circuit Court of Appeals for this Circuit said in Ashley v. Weeks-Numan Co., 220 F. 899, is pertinent to the case at bar. On page 901, Judge Rogers, in restating the rule of law applicable, said:

"It is apparent that 'the general form and relative proportions of the base and cover, which present to the eye an appearance of a low comparatively wide, construction,' were new; nothing like them being disclosed in the prior patents. It may be that sliding covers were old, and that low, broad flat bases were not new, and yet the design of an inkstand having these elements may not be wanting in invention.

"'The principle, as applied to design pat-

ents, is unassailable that whenever ingenuity is displayed in producing something new, which imparts to the eye a pleasing impression, even though it be the result of uniting old forms and parts, such production is a meritorious invention and entitled to protection.' General Gaslight Co. v. Matchless Mfg. Co. (C. C.) 129 F. 137; Graff v. Webster, 115 C. C. A. 432, 195 F. 522.

"This court has before said, and now repeats, that the fact that each separate element in a patented design was old does not negative invention, which may reside in the manner in which they are assembled, since it is the design as a whole, and the impression it makes on the eye, which must be considered."

Assuming, therefore, that each separate element—waffle iron, pedestal, and base is old, and may be found in the prior art, the invention resides in the way the combination is assembled, which results in a waffle iron that is both pleasing to the eye and artistic in appearance. The dominant characteristics of the design which distinguish it broadly from any prior waffle iron or from any other prior structure of any kind is the round waffle iron supported by a relatively small pedestal merging into an extended and relatively flat circular base of larger diameter than the waffle iron proper.

Holding that the design shows invention, and finding nothing in the prior art which anticipates it, invalidates it, or in any way affects its scope or validity, it follows that the patent in suit must be held valid.

### Infringement.

The plaintiff asserts that it is obvious that defendant's waffle irons have the same distinctive features of design as the plaintiff's, combining in the same manner all of the characteristics of the plaintiff's design, which consist of the round waffle iron supported by a relatively small pedestal merging into an extended circular and relatively flat base of larger diameter than the baking member. Plaintiff also calls attention to the fact that all four of its witnesses testified that, in their opinion, defendant's irons and plaintiff's design are the same. This would be quite natural, because Randolph is the patentee, Hulbert is the New Haven agent for the plaintiff, Bohn is an agent in New York City, and Vogel also sold plaintiff's products in New York City. In certain respects, I think it may be safely said that the defendant's iron resembles plaintiff's design, in that it is a round waffle iron on a pedestal and base, but the two are not the same.

There are marked and striking differences between them. The resemblances reside in the fact that each has heating sections which are round. Each has a pedestal, and each has a base, and each base is larger in diameter than the baking member. But there the similarities stop. There are a number of differences in the structure of the two irons, and those differences are marked and clear to the eye of the ordinary observer. In the plaintiff's design, the baking iron is comparatively thin, while in defendant's irons it is thick, and, though the difference is only an inch, it gives the appearance of being nearly double in thickness. In the plaintiff's design there are two openings for the electric wires or plugs. One of them feeds into the upper heating section, and the other feeds into the lower heating section, and they both stick out prominently, so that the eye of the ordinary observer cannot help but see them.

In defendant's device, there is no electric connection in either of the heating irons. The wire or plug is inserted in the pedestal part of the device, and entirely out of sight, which, as it seems to me, is not only a substantial difference in fact, but presents a marked difference to the eye of the ordinary observer. It is clear that heat must be transmitted to both the upper and lower heating sections. The plaintiff accomplishes this by means of two plugs, as already stated. The defendant does it with one plug inserted in the pedestal, which necessitates the use of a connecting wire running in a flexible loop from the lower to the upper iron, so that the heat is conducted to the upper iron by this wire, which is inclosed in a heavy nickel plated flexible metal covering which presents to the eye of the ordinary observer a feature or an attachment not on plaintiff's design. For the purpose of lifting the upper iron in order to pour in the batter when one desires to use the device shown in plaintiff's design, there is attached to the upper iron a circular wooden handle 2⅜ inches long which is attached to a short metal piece about 1¾ inches long, which is screwed to the upper iron. The defendant's iron has no such handle. It has the handle featured in the Smith patent, supra. The wooden part is flat, 3 inches long, and is attached to the metal piece forming the handle, which is about 6½ inches long, attached with screws to the upper grid when the user desires to lift the iron, and shiftably attached to the lower grid when it is desired to use the handle as a bail to carry the utensil from place to place. The pedestals differ in detail, but the differences would prob-

ably not be noticeable to the eye of the ordinary observer. But the bases differ, and I think substantially—at least enough so as to warn the ordinary purchaser, though it is true the differences are not striking. In the plaintiff's base, there is much less flare as the base approaches the pedestal than there is in defendant's device. The outer rim of the plaintiff's base is more generally on the same level with the whole base. In the defendant's, the outer rim is upturned, and presents a substantial difference to the rim shown in plaintiff's design.

Having pointed out the main differences between the two articles—and having noted that the marked and striking differences pertain to the iron, and are those which the eye of the ordinary observer or purchaser would instinctively notice first—we must apply to these facts the rule respecting infringement of design patents laid down by the Supreme Court in Gorham Mfg. Co. v. White, 14 Wall. (81 U. S.) 511, 20 L. Ed. 731. Mr. Justice Strong delivered the opinion, and on page 528 said: "We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

Applying this rule to the facts in the case at bar, and having noted the marked and substantial differences, I conclude that the ordinary purchaser would not be deceived into purchasing defendant's iron supposing it to be the plaintiff's. In the Gorham Case, the configuration differences between the two designs were slight. The Supreme Court found that the minor differences were so minute as to escape observation, and so held infringement. But here, as I view it, the differences in the waffle iron and handles are so marked, not to mention any differences in pedestal or base, that the eye of the ordinary observer could not be deceived. It is to be noted that Mr. Justice Strong refers to the "ordinary observer." This, of course, eliminates the expert, and it likewise eliminates the stupid.

The plaintiff argues that shortly after the defendant's device came on the market the sales of plaintiff's iron fell off. The evidence shows that this was true, but, when it appears that the plaintiff's price was $15 and the defendant's $9, it seems reasonable to conclude that the much lower price was far more responsible for the decline in plaintiff's business than that the ordinary purchaser was deceived into thinking he was buying the plaintiff's device when, in fact, he was purchasing the defendant's waffle iron. This conclusion is supported by plaintiff's witness Hulbert, who, in answer to other questions, frequently emphasized the fact that it was the price—the lower price of the defendant's waffle iron which cut into the plaintiff's sales, because he asserted he knew that "the price situation is a big factor."

For the reasons herein given, there may be a decree holding the patent valid, but not infringed, and an order to dismiss the bill, with costs to the defendant.