## VALLEY SHOE CORPORATION v. TOBER-SAIFER SHOE CO.
### No. 12267.

District Court, E. D. Missouri, E. D.

Dec. 30, 1938.

Ralph Kalish and Alfred W. Petchaft, both of St. Louis, Mo., for complainant.

A. B. Frey and Lawrence H. Cohn, both of St. Louis, Mo., for defendant.

DAVIS, District Judge.

This is a suit for the alleged infringement of a design patent, number 102,622, granted Hans H. C. Odencrants on January 5, 1937, application filed on November 16, 1936. Complainant, a manufacturer, is the owner of the patent. The defendant is a jobber.

The answer sets up the usual defenses: noninfringement and lack of invention.

The patent discloses a design for a woman's shoe. A more accurate conception of the design will be apparent if we describe it as a sandal, an old, even ancient, form of foot wear. That is, a shoe composed of a sole held to the foot by means of straps.

The patent reveals a sole, with heel attached, designed to be held to the foot by three weaving straps of uniform width. Two of these straps are attached to the sole near the toe, and pass over the foot and are then fastened to the sole near the front of the shank. The other weaving strap is attached to the sole midway of the vamp, and passes up, more or less vertically, over the instep, thence forming a collar around the quarter of the shoe, back over the instep to the sole opposite the starting point.

The design disclosed in the patent shows a buckle on this collar, but this is said not to be important. This makes up an open toe shoe, with the upper formed by weaving straps of uniform width, making irregular openings between the straps, and a large opening on either side between the vamp and the quarter.

The accused shoe, defendant's sandal, presents somewhat similar appearance, but with marked differences. (1) The straps do not uniformly weave under and over other straps. One of the straps that passes from near the toe across the foot to the front of the shank on the opposite side does not weave at all, but passes under both of the other straps. The same may be said of one of the straps that passes over the instep, except that it runs over both intersecting straps. Neither of these straps weaves under and over the other strap as in the

patent. (2) The straps are not uniform in width:. the two straps that pass from near the toe to the front of the shank are perceptibly broader than the straps that pass over the instep. (3) There are two instep straps on defendant's shoe, each of which has a concealed attachment to the side of the quarter, and they do not form a collar around the quarter. (4) The inside instep strap of defendant's shoe passes under the outside attached strap, while in plaintiff's design, the arrangement is just the contrary.

The inventor stated that the closed quarter shown in the shoes offered in evidence is not a feature of its design, which covers both open and closed quarters.

■ Plaintiff argues that the above noted differences in the two designs do not avoid infringement. If not, then a serious question is presented as to the validity of the patent. If these designs are essentially the same, though different in form, how can there be invention as a result of the modifications that have been made in prior art shoes to produce the patent in suit? That which infringes a patent if later, anticipates it if earlier, is an axiom of the law. Miller v. Eagle Manufacturing Company, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121.

Defendant's Exhibit 1 is an open toe strap shoe which was on the market prior to the patent, and has the same general make up of the accused shoe except that straps are tapering.

Grossman Design Patent No. 98,510 reveals a weaving strap of substantially uniform width, and the patent is prior to that in suit.

Boot and Shoe Recorder of June 20, 1936, page 24, shows an open toe shoe with upper formed of straps of uniform width, and embodies the general arrangement of the design in suit.

Geller Design Patent No. 91,934 discloses a sandal with weaving straps in uniform width.

■ Many other patents and publications were offered in evidence, and we may properly observe the illustrations found in the standard dictionaries and encyclopedias. These all disclose some elements, or all the elements, that go to make up plaintiff's design. They thoroughly convince one who will make the search that the inventor has merely made a slightly different arrangement of features disclosed in the prior art of shoe designing.

We turn to the law of this case to determine the effect of the facts above stated. The right to the patent is based upon the statute, 35 U.S.C.A. § 73, which reads: "Any person who has invented any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof, and not patented or described in any printed publication in this or any foreign country before his invention thereof, or more than two years prior to his application, and not in public use or sale in this country for more than two years prior to his application * * * may * * * obtain a patent therefor."

■ In Smith v. Whitman Saddle Company, 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606, the Supreme Court said [page 770]: "To entitle a party to the benefit of the act, in either case [mechanical patent or design patent] there must be originality, and the exercise of the inventive faculty. In the one there must be novelty and utility; in the other, originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius,—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful they may be in their new role, is not invention."

■ The rule, as above stated, is reiterated in the many design patent cases down to the present time. The cases are too numerous to mention; yet, in the application of the rule, mere lip service seems to have been offered, and there has been a marked tendency to regard as patentable any design that is new, pleasing and attractive to the trade. This comes from a complete abandonment of the elemental conception of a patent. A "new and original" effect is just as important here as in the case of a mechanical patent. Sodemann Heat & Power Co. v. Kauffman, 8 Cir., 275 F. 593, loc. cit. 597; Nat Lewis Purses, Inc. v. Carole Bags, Inc., 2 Cir., 83 F.2d 475.

■ Plaintiff's design adds nothing to what was already well known, and its conception was not the exercise of inventive genius. The result produced was effected by altering and rearranging the parts that make up a shoe. It was merely the application of the usual skill displayed by shoe designers in the trade, as evidenced by the forms and shapes, without number, now on the market. The design, absent the color

and display thereby created, is not more ornamental than many types of similar shoes. The requirement is, "It must present to the eye of the ordinary observer a different effect from anything that preceded it, and render the article to which it is applied pleasing, attractive, and beautiful; there must be something akin to genius, an effort of the brain, as well as the hand." Sodemann Heat & Power Co. v. Kauffman, supra, 275 F. 597. "The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful they may be in their new role, is not invention." Smith v. Whitman Saddle Company, supra. The patent in suit is invalid in the light of the prior art.

The shoe sold by defendant, of which complaint is made, does not infringe plaintiff's design. Any prospective purchaser who was familiar with plaintiff's design would not, by reason of the many differences above noted, accept the accused shoe thinking it was the plaintiff's design. She might accept it, or any one of the other available types as answering the purpose, but she would not be deceived in so doing.

Findings of Fact and Conclusions of Law in compliance with Rule 52, Rules of Civil Procedure, 28 U.S.C.A. following section 723c, together with a decree dismissing the complaint, may be tendered for approval, signature and entry.