## DUNCAN & MILLER GLASS CO. v. HAZEL ATLAS GLASS CO.

### No. 9.

District Court, N. D. West Virginia.

Oct. 14, 1942.

W. G. Stathers, of Clarksburg, W. Va., and Stebbins & Blenko, of Pittsburgh, Pa. (George E. Stebbins and Edward Hoopes, III, both of Pittsburgh, Pa., on the brief), for plaintiff.

James M. Guiher, of Clarksburg, W. Va., and Harry R. Pugh, Jr., of New York City (Stephen H. Philbin and Fish, Richardson & Neave, all of New York City, on the brief), for defendant.

HARRY E. WATKINS, District Judge.

This is a patent infringement suit, involving a design patent of a dish. Only two questions are presented. Is the patent in suit valid? If so, is such patent infringed by the glass dishes made by defendant? The parties are in agreement as to the rules of law by which both validity and infringement are to be determined, leaving only questions of fact for the court.

Upon the question of validity both parties rely upon the rules of law stated in the most recent decision of the Circuit Court of Appeals of the Fourth Circuit involving a design patent. Connecticut Paper Products, Inc., v. New York Paper Co., 127 F.2d 423, 429. There a design patent of a paper cup dispenser was held invalid, the court saying:

"It was early established that for a design to be patentable, there must be both originality and the exercise of the inventive faculty. Western E. M. Co. v. Odell, D. C., 18 F. 321. And the test of invention for a design patent is the same as that applied to mechanical patents, namely, was the design beyond the powers of the ordinary designer. * * * As was stated in Sodemann Heat & Power Co. v. Kauffman, 8 Cir., 275 F. 593, 597: 'A design, to be patented, * * * must present to the eye of the ordinary observer a different effect from anything that preceded it, and render the article to which it is applied pleasing, attractive, and beautiful; there must be something akin to genius, an effort of the brain, as well as the hand.'"

The fact that the elements of a design patent are old does not of itself establish lack of invention. It is necessary, however, that the elements, whether new or old, be grouped or combined in such a manner as to produce a pleasing, attractive or beautiful effect, different from anything that preceded it. Try-Me Beverage & Compound Co. v. Metropole, D.C., 25 F.2d 138. The adaptation of old devices or forms to new purposes, however convenient, useful or beautiful they may be in their new role, is not alone enough. Given the benefit of prior designs as a starting point, the factor of inventive genius must be present in producing the new design. Smith v. Whitman Saddle Co., 148 U.S. 674, 679, 13 S. Ct. 768, 37 L.Ed. 606. A patent is presumed to be valid, but such presumption is rebuttable. Radio Corporation v. Radio Laboratories, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163.

Plaintiff contends that its patent (May Design Letters Patent No. 115,935) meets these requirements, and that the new elements of its design are as follows: (1) Pillowed ribbing in a leaf motif, (2) veins are incised, or in intaglio, (3) ribs and veins arranged in whorling fashion, (4) ribs in form of compound curve of changing section. Defendant says that May did nothing more than design a dish which combines a heart-shaped leaf motif with pillowed ribs, both the general motif and pillowed ribs being old; and that the patent is invalid because the patented design was not beyond the powers of the ordinary designer, in view of prior designs.

Leaf-shaped dishes in many shapes and sizes were common long before the May design patent came into existence on August 1, 1939. For example, the Phoenix Glass Company made a dish with a leaf motif. Deft's Ex. 2. The May patent is very similar to the Phoenix dish in general shape of the leaf and outside contour. The general appearance of the two dishes is very different, because the Phoenix dish does not have pillowed ribbing, and the veins of its leaf are raised like a natural leaf, whereas the veins are incised, or are in intaglio in the May patent, as the result of pillowed ribbing.

Pillowed ribbing in glass dishes is also old. Pillowed ribbing means that the dish, instead of being flat on the out-

side or bottom has a series of convex ribs, and incised veins which tend to give it a high degree of refraction and beauty. This pillowed ribbing was used in a shell-shaped dish by Westmoreland Glass Company prior to the May patent. Deft's Ex. 13. The Westmoreland dish, like the May patent, emphasizes the beauty that can be obtained in glassware by pillowed ribbing. Refraction of light brings out the interior lines of the shell with the same beauty that the veins of the leaf stand out in the May patent. Because of the pillowed ribbing and the refraction of light resulting therefrom, the lines of the shell and the veins of the leaf change in width and appearance as either dish is moved, adding much beauty. Cutting or arranging the exterior of glassware to give this refraction is not new in the glass industry. Pillowed ribbing is new in a leaf motif, although the Westmoreland Company themselves called their dish their "No. 324 leaf tray". What May has done is to transfer the pillowed ribbing from a shell to a leaf motif. In my opinion, it was not beyond the capacity of the ordinary designer to do this, and did not require the exercise of inventive genius. Some minor changes are made in the leaf over prior leaf designs, such as arranging the veins in a whorling fashion, but these changes, when added together, do not rise to the status of invention. As was stated in Western Auto Supply Co. v. American-National Co., 6 Cir., 114 F.2d 711, 712: "If the variation sought to be patented is of such nature that it would naturally occur to one of average skill in the field, it is in reality in potential possession of the public, and to reward it with the monopoly of a patent would be out of harmony with the purpose and intent of the statute. When the idea is adapted or derived by analogy from prior usage, or when it is embodied in a design resembling the prior art in general appearance or central theme, there is no patentable invention".

The central theme of the May patent is the pillowed ribbing. It is true that the pillowed ribbing is not exactly the same as that previously used in the Westmoreland dish, but the general appearance and refraction of light is the same. The ribbing creates the same scintillating effect in both dishes when they are viewed from the top, although the ribbing is on the bottom. Intaglio veining means that the veins are incised or depressed below the pillowed ribs which is the natural result of using ribs. The incised veining naturally results from the pillowed ribbing and the two produce the beautiful highlights in the glassware, and are therefore considered together. Much has been said in the evidence about the ribs and veins of the May patent being arranged in whorling fashion; that the ribs are in form of compound curve of changing section; and that the May patent has rhythmic flow, variety, and unity not found in the prior art. These differences did not appeal to me at the trial, and after carefully reading the evidence and comparing the May patent with the prior art, they still fail to impress me. Samples of plaintiff's dishes, which are handmade, of high-grade glass, and sold in the most exclusive shops in the country, have been introduced in evidence. These dishes are of beautiful color, with pillowed ribbing, and produce unusual highlights. In comparing plaintiff's glassware with samples of the prior art we must remember that the quality, color and thickness of the glass will account for some difference in beauty and general appearance, but here we are not concerned with quality but with design only.

Three designers gave their opinion as to whether the May patent was beyond the capacity of an ordinary designer when given the benefit of the prior art, including the Phoenix and Westmoreland dishes, as a starting point. Dohner, an expert designer of wide experience, called by plaintiff, said that it took more than ordinary talent, and showed inventive genius. On cross-examination, he admitted that in his opinion a graduate of an art school, such as the Carnegie Institute of Technology, should be capable of doing such a thing. Miss Herpel, who designed defendant's dishes, was a graduate of such institution. She stated that the patent was not beyond the ability of an ordinary designer. Spence, another designer called by defendant, testified to the same effect.

There is evidence that the patent office considered the Waddell patent, showing a dish with pillowed ribs, arranged similar to the Westmoreland dish, at the time it granted the May patent.

Plaintiff insists that its patent has met with great commercial success and that such success strengthens the presumption of its patentability. I do not give much weight to this argument. The commercial success of a patented article is not always a good criterion of its actual utility, much

less of its patentable novelty. This is obvious because commercial success is very often due to extensive advertising, large commissions to dealers, and high-powered salesmanship, instead of intrinsic merit of the articles themselves. McClain v. Ortmayer, 141 U.S. 419, 428, 429, 12 S.Ct. 76, 35 L.Ed. 800.

I find that the May design patent is invalid, and now proceed to the question of infringement.

■ The parties are in agreement as to the law of infringement, as laid down in the leading case of Gorham Mfg. Co. v. White, 14 Wall. 511, 526, 528, 20 L.Ed. 731, wherein the court stated:

"We hold, therefore, that if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other".

■ Defendant made four dishes in its so-called "leaf line", an ash tray, dessert dish, salad plate and salad bowl, which plaintiff claims to infringe the May design patent. Witnesses for both parties agree, after examination of dishes made by plaintiff and defendant, that the similarity is greatest in the ash trays, Exhibits 2 and 13. If there is no infringement in the design of the ash trays, there is even less evidence of infringement in the other dishes. Defendant's ash tray is marked Ex. 2 and plaintiff's ash trays are marked Ex. 13 and Ex. 14. Plaintiff's design patent is shown in drawing marked Ex. 1. The comparison to be made by the court on infringement is between plaintiff's patent and defendant's construction, and not between plaintiff's construction and defendant's construction. Akro Agate Co. v. Master Marble Co., D. C.N.D.W.Va.1937, 18 F.Supp. 305, 332.

The design of the patent, in outline and contour, looks like a heart as used in a valentine. The outline and contour of defendant's ash tray has no resemblance to a heart, but looks like a leaf. The outside, or contour, is a very important factor in making up the general, or over-all impression to the average purchaser. Defendant's ash tray has a stem while the design patent has no stem. The stem is of prime importance and is one of the first differences to strike the eye of the ordinary observer. The stem tends to greatly accentuate its resemblance to a leaf, and at the same time remove it from the heart-shaped appearance of the design patent. It is true that in many cases the absence or presence of a stem would make little difference in the over-all effect of a leaf motif. This would be especially true where both dishes are definitely and distinctly leaf designs. But where one partly resembles a leaf and also looks like something else, the absence or presence of a stem is of greatest importance to the ordinary observer in his over-all impression as to similarity. Indeed, the presence of a stem may give one dish the appearance of a leaf motif or design, whereas it would look like a heart motif without the stem, thereby completely changing the general impression to the ordinary observer.

The outside rim of the defendant's ash tray is much heavier than that shown in the design patent. It has a wide, flattened rim of varying width, whereas the design patent has a rim of uniform width. The interior of defendant's ash tray is circular, and entirely different from the outside shape of the dish. The interior of the design patent follows its heart-shaped exterior. The pillowed ribbing in defendant's ash tray begins at a narrow point on the base and rapidly increases in width as the ribs approach the outer edge of the dish. The width of the ribbing in the patent is much more uniform. The top lobe, or scallop, on the patent points to the left, whereas the top lobe on defendant's dish points to the right. The lobes or scallops are much more pronounced in defendant's ash tray with deeper indentations, than in the patent.

There is less evidence of confusing similarity in defendant's other three dishes. The dessert dish, salad plate and salad bowl (Ex. 2, 3 and 4) are different in shape and far different in the "pillowed ribbing" and refraction. The pillowed ribbing, if any, on these three dishes of defendant is very slight. Defendant's dishes are flat on the bottom while plaintiff's dishes have rounded pillowed ribbing between each vein, creating an entirely different appearance by reason of refraction.

Seven expert witnesses were offered by plaintiff, most of them being dealers or distributors in plaintiff's glassware. They all testified on direct-examination that an ordinary purchaser would be confused in the two lines of glassware. On cross-examination, plaintiff's witness, Jesschke of Ovington's Gift Shop in New York City,

which handles plaintiff's dishes, admitted that an ordinary purchaser would not confuse any of defendant's dishes with plaintiff's design. Other witnesses for plaintiff on cross-examination stated that a purchaser "might" make a mistake, "could" be confused, or that confusion was "possible". All of plaintiff's witnesses agreed that they, themselves, would not be confused in the two lines. Throughout the testimony of plaintiff's witnesses much emphasis is placed by them upon the fact that plaintiff's glassware is handmade "quality" glassware, whereas defendant's line is cheap machine-made glassware; and that the public would buy the cheaper glassware because of the vast difference in price. For example, plaintiff's salad plate sells for about 90 cents, as compared to defendant's salad plate which sells for about 12 cents. Both lines of dishes have some resemblance to a leaf. Both include a salad bowl, salad plate, dessert dish and ash tray. The cheaper dishes serve the same general purposes as the quality ware. In effect, plaintiff's witnesses say, under such circumstances, the ordinary purchaser will buy defendant's salad plate instead of plaintiff's plate. It is true that plaintiff's witnesses also assign other reasons, but throughout the evidence they all emphasize the vast difference in quality and price. I can understand their attitude because it is my opinion that the decision of the buyer has been based upon the difference in price instead of a confusion between the two designs.

Plaintiff has offered figures to show the rapid decline in its sales about the time defendant's dishes came on the market. The introduction of defendant's dishes has undoubtedly hurt plaintiff's sales, but this is not infringement. The decline in sales, in my opinion, was due to the fact that the public was given an opportunity to buy leaf-shaped dishes of a different, but attractive design, which would answer the same purpose, at a vastly lower price.

Defendant offered nine witnesses, including three of its employes, two employes of department stores which have sold the ware of both plaintiff and defendant, and two ordinary housewives as ordinary purchasers. Their testimony is to the effect that defendant's dishes are not confusingly similar to plaintiff's design and that the ordinary purchaser would not buy defendant's dishes thinking he was purchasing plaintiff's design.

The testimony of these witnesses is for the purpose of assisting the court in assuming the position of the ordinary purchaser in his visual examination and comparison of defendant's dishes with plaintiff's design patent. The court's viewpoint should not be that of a critical examiner comparing the two designs side by side, but that of the ordinary purchaser carrying a mental picture of one item, and seeing the other item with that mental picture only to use as a basis of comparison.

Applying these principles to this case, I find that defendant's dishes do not infringe the May design patent. The ordinary purchaser will not notice all the differences in the two designs, but, collectively, they create a difference or distinction which is readily observed by the ordinary purchaser, and apparent to me in my over-all impression of the two designs. The difference between the two designs is readily apparent to anyone, expert or non-expert, and there seems no likelihood that whether looked at together, or apart, the one would be mistaken for the other.

Plaintiff states that defendant copied plaintiff's design. There is no evidence to support such a charge, and I see no merit in this contention.

An order may be entered in accordance with this opinion.