## DRUEKE v. F. W. WOOLWORTH CO.
### Civil Action No. 356.

District Court, W. D. Michigan, S. D.

Feb. 7, 1945.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for plaintiff.

J. B. Felshin, of New York City, and Wm. Cyrus Rice, of Grand Rapids, Mich., for defendant.

RAYMOND, District Judge.

### Findings of Fact.

1. William F. Drueke, plaintiff, is a resident of Grand Rapids, Michigan, and is sole owner of United States Design Letters Patent No. 134,812 for chessmen, issued to plaintiff on January 19, 1943.

2. Defendant, F. W. Woolworth Company, is a corporation organized and existing under the laws of New York, and has a place of business in the City of Grand Rapids, Michigan, within the jurisdiction of the United States District Court for the Western District of Michigan, Southern Division.

3. On August 7, 1943, plaintiff purchased at defendant's Grand Rapids store a set of chessmen manufactured by E. S. Lowe Co., Inc., of New York City.

4. Thirty-two chessmen are needed in each set, and they are of six different kinds, to-wit: two kings, two queens, four knights, four bishops, four rooks and sixteen pawns. The patent in suit shows six chessmen, to-wit: a king, queen, knight, bishop, rook and pawn. The chessmen shown in the patent are of the peg type or miniature type for use in pocket size or traveling chess sets.

5. The chessmen of plaintiff were first produced in December, 1941. They have had a marked commercial success since that time, having been sold by plaintiff and his family associates in business with him to the extent of 300,000 sets.

6. The chessmen of a small size and commonly known as "Pocket Chessmen" had been supplied before the present World War by imports from France, which imports were interrupted upon the defeat of France. The small or pocket chessmen imported from France were available for reproduction in this country, and were substantially reproduced by John Samuels & Son in New York City. They were marketed through a national distribution on the part of said John Samuels & Son throughout the United States, and at the time the plaintiff produced and offered his design of chessmen, the demand in the United States was substantially supplied by John Samuels & Son.

7. In the patent office proceedings, only one reference was cited, the same being page 262 of catalog of Henry Bainbridge & Co. (Plaintiff's Exhibit 6). This reference is not as close to the patented design as is the prior art in evidence.

8. L. Oppleman Co. of New York City and L. Oppleman, Inc., its predecessor, longer than one year prior to the filing date of the patent in suit, sold in the United States imported chess sets as exemplified by defendant's exhibits A, D, F, G–1, and J. These chessmen are listed and illustrated in catalogs of L. Oppleman Co., and its predecessor, L. Oppleman, Inc., in their catalogs of record, defendant's exhibits K, K–1, K–2, K–3, L, L–1, L–2, L–3, M, M–1, M–2, M–3, N, N–1, N–2, N–3, published more than one year before the filing date of the patent in suit. Because of the war, importations of all of these chess sets ceased prior to one year before the filing of the patent in suit.

9. William Rott of New York City, longer than one year prior to the filing date of the patent in suit, imported from France and sold in the United States chessmen such as defendant's exhibits R, R–1, R–2, R–3. These chessmen are illustrated and listed in William Rott's catalogs published in 1931, defendant's exhibits S, S–1, S–2. Because of the war, importation of these sets ceased more than one year before the filing of the patent in suit.

10. John Samuels of New York City imported from France and sold in this country, more than one year prior to the filing date of the patent in suit, peg type chess sets such as defendant's exhibit U. Importation of this set ceased more than one year prior to the filing date of the patent in suit. Also more than one year before the filing of the patent in suit, said

John Samuels manufactured in the United States a peg type chess set such as defendant's exhibit W, the same being illustrated in defendant's exhibits X, X–1, X–2, catalogs published in 1940.

11. E. S. Lowe Co., Inc., of New York City sold in the United States more than a year prior to the filing date of the patent in suit, American made sets made by Gits Molding Corporation of Chicago, Illinois, defendant's exhibit BB.

12. The part of the design which is common to all six chessmen, to-wit, the peg, the base, and the bead above the base, was old in a number of peg type chess sets in the prior art, for example, defendant's exhibits U, W, R–1 and R–2.

13. The pawn in the patent in suit is substantially identical to the pawn in the imported French set, defendant's exhibit U, and also substantially identical to the pawn in the Samuels' domestic set, defendant's exhibit W. It is also identical to the pawn in sets imported by L. Oppleman, Inc., defendant's exhibit A, and in the William Rott French imported set, Exhibit R–1.

14. The rook of the patent in suit is substantially identical to the rook in the French set, defendant's exhibit U, except that the parapets in the patent are straight instead of rounded, but these parapets are identical to the parapets in the rook of the Samuels' set, defendant's exhibit W, which design Drueke follows. The rook in the design patent in suit, is also identical to the rook in defendant's exhibit A imported by L. Oppleman, Inc., and follows the design of the rook in defendant's exhibit BB sold by E. S. Lowe Co., Inc.

15. The knight in the design patent in suit is a direct copy of the knight in the French set, defendant's exhibit U.

16. The bishop of the design patent in suit has the lower part of the bishop in the French set, defendant's exhibit U, but includes a mitered top of the bishop of the larger chessmen such as defendant's exhibit BB, and, particularly, defendant's exhibit J. The curvature of the top of plaintiff's bishop is identical to the shape of the bishop in defendant's exhibit J. Mitering of the bishop has been standard practice for many years.

17. The queen in the patent in suit is almost identical with the queen in defendant's exhibit W, and in the William Rott chessmen, defendant's exhibits R–1 and R–2.

18. The king in the design patent in suit has a lower half of the king in the French set, defendant's exhibit U, and the general shape of this set. It includes the Maltese cross used from time immemorial in the kings of chess sets. The king follows the upper or crown portion of the king in defendant's exhibit BB. It has the Maltese cross of defendant's exhibit J. The curvature of the upper half of the king follows the king in defendant's exhibit R.

19. Commercial success of chessmen sold by plaintiff was due to increased sales during the war as gift sets to men and women in service, and to the fact that importation had ceased before the war.

20. There is no characteristic of design common to all of the chessmen illustrated in plaintiff's design patent, excepting in the peg, the base, and the bead immediately above the base.

### Conclusions of Law.

1. Design Patent No. 134,812 in suit is invalid.

2. The portion of the design of the six chessmen which is common to all of the chessmen, to-wit: the peg, the base, and the bead just above the base, is anticipated by the prior art, and involves no invention.

3. The part of the design of the six chessmen which is common to all, is for the purpose of utility and is not ornamental within the meaning of the patent statutes relating to designs.

4. The design of the chessmen shown in the patent does not involve invention over the prior art. See Forestek Plating & Mfg. Co. v. Knapp-Monarch Co., 6 Cir., 106 F.2d 554; Western Auto Supply Co. v. American-National Co., 6 Cir., 114 F.2d 711; Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606; Walker on Patents, Sixth Edition, sections 45 to 52, inclusive.

5. A decree will be entered dismissing the bill of complaint.