**CAT'S PAW RUBBER CO., Inc., v.
JENCO et al.
Civ. No. 9487.**

United States District Court
D. New Jersey.
Dec. 15, 1949.

McCarter, English & Studer, Newark, N. J. (Ward James Herbert, Newark, N. J., Cushman, Darby & Cushman, by C. Willard Hayes, Washington, D. C., Simon E. Sobeloff, Baltimore, Md., and John J. Darby, Washington, D. C., of counsel), for plaintiff.

Evans, Hand & Evans, by John W. Hand, Paterson, N. J. (Paul Kolisch and J. Pierre Kolisch, New York City, of counsel), for defendants.

FAKE, Chief Judge.

This is an action for unfair competition coupled with an action for alleged infringement of design patents issued to one Esterson, Dec. 25, 1934, Des. 94,125, and another issued August 12, 1941, Des. 128,817, both assigned to plaintiff.

The design in Des. 128,817 pertains to a rubber heel. Its outstanding feature is the drawing of two white disks depicted adjacent the outer rear edge of the heel. These white disks bear a design of concentric circles broken by radial lines. The surrounding surface of the heel is dark in color disclosing lesser configurations in designed arrangements. As the picture meets the eye, the white disks stand out against a black background, while the other designs fade into insignificance.

Prior to the issuance of the above design patent, Esterson received a design patent, 94,125, on December 25, 1934. This patent was likewise assigned to plaintiff and expired in December of 1948. It covers the design of a shoe sole showing two white disks spaced along the center line of the sole. These disks likewise contain a design of concentric circles broken by radial lines, and they also stand out against a dark background of small arbitrary configurations. Here also the disks stand out as in the patent first above described.

Long prior to either of the above patents, on March 11, 1902, a patent was issued to one Foster, 695,298. This patent covered a tread for rubber soles and heels. It is not a design patent and has long since expired. It is pertinent here only because the drawings attached depict a design of disks inserted in the wearing surfaces of shoe soles and heels. Here also the disks stand out, to the eye, against the remainder of the sole and heel. They differ, however, from the design in suit in that here the disks are shown in spirals of dotted lines giving them a grey appearance, darker than the white surfaces in which they are set. These old drawings also differ from the design in suit

in that the sole contains some 17 disks and the heel contains 9 disks, uniformly laid out over their respective surfaces.

In dealing with the question as to the validity of the design patents in suit, it is well to have the words of the statute before us. 35 U.S.C.A. § 73, says: "Any person who has invented any new, original, and ornamental design for an article of manufacture * * * may * * * obtain a patent therefor."

Bearing in mind that here the problem is one of inventiveness, originality and ornamentality of design, it seems to me obvious that the picture of the circular disk formations, depicted in the drawings of the Foster patent, long predating the patent in suit, has for years, whether taking the disks in multiples or singly, made known the artistry and the ornamentality of these disks to the world.

■ Those coming into the trade after the expiration of the Foster patent were left free to take all or any lesser number of the Foster disk designs and apply them as designs in the sole and heel trade. It is so easy to confuse the realm of design with that of trademark that I must again emphasize the fact that design, and design alone, is the problem here. So it is that I must look for and find something original as well as ornamental in the patents before me. That there was nothing new or original in picturing white circular disks imbedded in soles and heels, at the time the patents in suit were issued, is disclosed by three predating exhibits of the "Biltrite Heels," one of which shows three white disks against black rubber backgrounds, and two of which show two white disks placed substantially as in plaintiff's heel design. True, the subordinate designs appearing on the surfaces of these heels and the minute designs of the disks are not exactly the same as plaintiff's, but these insignificant differences cannot spell out originality. Nor can the fact that the "Biltrite" heels are designed to utilize nails spell out originality in a disk not so designed. I, therefore, conclude there is no originality in plaintiff's patents.

As to what is ornamental, one is put to great straits. In the broad field of art anything may be deemed ornamental if directed toward attracting the eye to a sphere outside of utility or necessity, and even within these spheres it may be found if the picture presents a thought of beauty or artistic adornment. In reasoning on this point our greatly respected Judge Learned Hand said, "We recognize that in aesthetics there are no standards, and that the design need not please such sensibilities as we may personally chance to possess. Nevertheless, we must find that the disclosure has at least a rudimentary aesthetic appeal, for so we interpret the word, 'ornamental.'" H. C. White Co. v. Morton E. Converse & Son Co., 2 Cir., 20 F.2d 311, 312. This leaves me in a field which recognizes no standards, and yet I am put to the necessity of finding a rudimentary rule therein. In attempting to do so, I must efface my own predilections and attempt to function in the sphere of an imaginary other being. So attempting I see nothing really ornamental in plaintiff's white disks, much as they have danced before my eyes. I do see in them an attempt to extend the time of the expired Foster patent 695,298.

■ The drawings in the Perkins patent, 1,068,073, Fig. 1, issued July 22, 1913, shows a picture of two round disks at the back of a heel. The Aagaard patent, 1,-069,839, Figs. 2 & 4, show, in design, if not in physical composition, several insertions of round disks. But for their physical composition they are the equivalent of round disks. The same is true of Fig. 1 in the Harris Patent, 1,129,672, of Feb. 23, 1915, and of Berenstein, Fig. 1 of patents 1,155,874 of Oct. 5, 1915 and 1,-173,088 of Feb. 22, 1916, and Schlesser 1,521,794 of Jan. 6, 1925, and Berenstein 1,867,132, Fig. 1 and 4 of Jan. 12, 1932. These pictures bring into bearing an opinion of Judge Minton of the 7th Circuit, now Mr. Justice Minton of our Supreme Court, where he said, Zangule & Peterson Co. v. Venice Furniture Novelty Mfg. Co., at 133 F.2d 266, 269, in dealing with a design patent: "However, the words 'invented' and 'new' and 'original' must be construed together in applying the usual rule that there must be an exercise of inventive genius, which precludes the grant of patent

monopoly upon the exercise of mere skill of an ordinary designer who is chargeable with knowledge of the prior art." Applying that reasoning to the pictures and diagrams above cited as long preceding the patent in suit, I am quite unable to find anything more than the skill of an ordinary draftsman designer in the patents in suit. They are therefore, void.

This brings us to the charge of unfair competition.

It appears that plaintiff is the owner of Esterson patent 2,256,863, covering the manufacture of rubber and cord heel and sole plugs, devised to prevent slipping and so inserted into soles and heels by vulcanizing as to become integral thereto. This patent is not under attack in this suit. It is here because the finished product results in the appearance of white disks, as in plaintiff's design patent. It is contended that defendants, in putting on the market a product similar to the eye, are engaged in deceiving the public into purchasing defendants' product as being that of the more efficient and more expensive product of the plaintiff.

In furtherance of plaintiff's contention an investigation was made by a specialist who sent a woman out to visit local shoe repair shops. She visited 102 shops; 56 in New Jersey, 36 in New York and 10 in Connecticut. In each instance she produced old shoes for the placing of rubber heels thereon, and told the repair man she wanted rubber heels "with the two white dots, called Cat's Paw." The result was that in 61 instances she received exactly what she asked for. In 25 instances the repair man stated they had no Cat's Paw heels. In 7 instances the repair men argued that the Nojar Heels were the same as the Cat's Paw heels. Thus it appears that in 93 instances out of 102 there was no attempt at palming off or confusion in identity. As to the 9 remaining heels it appears that defendant's Nojar heels were substituted for plaintiff's Cat's Paw heels in 4 instances, and in the remaining 5 instances there were substitutes of other makes.

Nothing in the nature of a secondary meaning can be established on the evidence here, and the instances of palming off or substitution are few. The probative value of this evidence is very limited. Considering all the facts submitted, I am quite unable to spell out unfair competition.

An order will be entered holding the design patents in suit void, and the charge of unfair competition is dismissed.

### Findings of Fact

The finding of material and ultimate facts are as follows:

1. Plaintiff is a corporation of the State of Maryland and has its office and place of business in Baltimore, Maryland. Defendants, husband and wife, are individuals and partners in business trading under the name of Nojar Rubber Company. Defendants reside in Paterson, New Jersey.

2. Plaintiff is the owner of United States Design Letters Patent, Des. 94,125 dated December 25, 1934 and Des. 128,817 dated August 12, 1941 and has been the owner since their grant.

3. Des. 94,125 pertains to a rubber sole for a shoe of which the outstanding feature is two white plugs placed along the center line thereof.

4. Des. 128,817 pertains to a rubber heel for a shoe of which the outstanding feature is two white plugs placed on the outer rear edge of the heel where wear would normally occur.

5. Plaintiff's Des. 94,125 expired on December 24, 1948 and was anticipated in all essential respects by the state of the prior art represented by: Foster Patent No. 695,298 of March 11, 1902 disclosing the employment of rubber impregnated textile plugs of cylindrical or other shapes in all or any part of soles and heels; Berenstein Patent No. 1,867,132 of July 12, 1932 disclosing heels with "one or more plugs" of contrasting color near the edge of rubber heels and aligned with nail holes "for ornamental or non-slipping purposes"; Harris Patent No. 1,129,672 of February 23, 1915 and Berenstein Patent Nos. 1,-

155,874 of October 5, 1915 and 1,173,088 of February 22, 1916, disclosing the Biltrite heel having three white plugs aligned with nail holes; Schlesser Patent No. 1,521,794 of January 6, 1925 disclosing anti-friction, wear-resisting plugs between nail holes of heels, and two plugs in the sole at "points ordinarily receiving the greatest wear"; Aagaard Patent No. 1,069,839 of August 12, 1913 disclosing the employment of one, two or three non-slipping circular fabric plugs for heels; and Perkins Patent No. 1,068,073 of July 22, 1913 disclosing the employment of two plugs of non-slipping material between nail holes of heels.

6. Plaintiff's Des. 128,817 was anticipated in all essential respects by the state of the prior art above stated against plaintiff's Des. 94,125 and also by said expired Des. 94,125.

7. Plaintiff has engaged in the manufacture of rubber heels and soles since about 1934 when it succeeded to the business of the Foster Rubber Co. which had prior thereto manufactured "Cat's Paw" products since about 1903. It has built up an extensive business throughout the United States and other parts of the world.

8. Plaintiff features products having incorporated therein non-slipping, friction-producing and wear-increasing plugs containing corded material. The plugs are manufactured by plaintiff by a process contained in plaintiff's patent 2,256,863 which is not in issue in this suit.

9. The manufacturing cost of making the plugs and incorporating them in plaintiff's products amounts to approximately ten per cent of the manufacturing cost.

10. Plaintiff has extensively advertised its products under the trademark of "Cat's Paw" and has expended large sums of money for this purpose.

11. Plaintiff's sales have progressively increased—increasing from $1,145,000 in fiscal year ending June 30, 1940 to $4,760,-000 in 1946.

12. Defendant Charles Jenco was formerly a stockholder, officer, and director of Jenco Brothers, Inc., Paterson, New Jersey, one of the largest shoe finding houses or jobbers in the country, selling "Nojar" rubber heels, manufactured for it under the Jenco design patent Des. 131,491, Ex., P-16 having a single white insert and known as the "Super 50".

13. On or about January 1, 1945 defendant Charles Jenco withdrew from Jenco Brothers, Inc., taking with him business consisting of the entire distribution of "Nojar" heels, which he and his wife, Kathryn Jenco, conducted as partners in the name of Nojar Rubber Co.

14. In or about July, 1945 defendants introduced to the trade the complained of soles and heels, which were manufactured for defendants by Cupples and Co. of St. Louis, Missouri in accordance with designs devised by defendant, Charles Jenco, and his brother-in-law, John Portelli.

15. Defendants' products contain two white plugs, similarly placed as plaintiff's, which are white rubber wafers containing no corded material. The surface treads of defendants' products are different from the surface treads of plaintiff's products; and defendants' products carry the tradename "Nojar" in large raised letters' while plaintiff's carry the legend "Cat's Paw won't slip" together with a representation of a cat.

16. Plaintiff's products are packaged in distinctively colored red and black cartons on which plaintiff's trademark is prominently placed. Defendants' products are packaged in cartons distinctively colored orange and brown or black on which defendants' trademark is prominently placed.

17. Prior to plaintiff's and defendants' introduction into the trade of their products, the Panther-Panco Company, maker of the Biltrite heel, had placed on the market heels having more then one plug of contrasting color on the surface of the heel. The only distinction between the Biltrite heel with two plugs and plaintiff's was that in the Biltrite the plugs were at the nail holes and were perforated, whereas plaintiff's plugs were between the nail holes. The distinction is not readily apparent on casual scrutiny.

18. On behalf of plaintiff an investigation was conducted by a specialist of the condition in the trade. A woman was sent

out to visit local shoe repair shops. She visited 102 shops; 56 in New Jersey, 36 in New York and 10 in Connecticut. In each instance she produced old shoes for the placing of rubber heels thereon, and told the repairman she wanted rubber heels "with the two white dots, called Cat's Paw." The result was that in 61 instances she received exactly what she asked for. In 25 instances the repairmen stated they had no Cat's Paw heels. In 7 instances the repairmen argued that the Nojar heels were the same as Cat's Paw heels. Thus, it appears that in 93 instances out of 102 there was no attempt at palming off or confusion of identity. As to the 9 remaining heels it appears that defendants' Nojar heels were substituted for plaintiff's Cat's Paw heels in 4 instances, and in the remaining 5 instances there were substitutes of other makes.

19. No investigation was ever made by plaintiff to determine whether defendants' soles were palmed off by repairmen for plaintiff's soles.

### Conclusions of Law

1. Because of the reasons set forth in an opinion filed herewith Design Patent 94,125 is invalid.

2. Because of the reasons set forth in an opinion filed herewith Design Patent 128,817 is invalid.

3. Defendants are not guilty of unfair competition.