## MOLINE PRESSED STEEL CO. v. DAVIS & VOETSCH, Inc.

District Court, S. D. New York.   April 29, 1927.

1. Trade-marks and trade-names and unfair competition ☞93(3)—Evidence held not to show that defendant's toys intentionally simulated plaintiff's products to deceive public.

In suit for unfair competition in sale of sheet metal toys made in replica of automobile trucks, express wagons, tank trucks, steam derricks, etc., evidence and affidavits *held* not to show that defendant simulated plaintiff's products to deceive ordinary observer into belief that in purchasing defendant's toys he was purchasing plaintiff's toys, any similarity resulting from nature of articles themselves.

2. Trade-marks and trade-names and unfair competition ☞70(1)—That unpatented toys were novel and became associated by public with plaintiff as source held not to entitle plaintiff to prevent others manufacturing and selling similar toys.

That sheet metal toys manufactured by plaintiff were of novel construction and were much stronger than the toys previously on the market, and that because of their novelty such toys became associated in the public mind with plaintiff as source, *held*, in absence of patent rights, not to give plaintiff any right to prevent others from manufacturing and selling similar toys, where there was no attempt to palm off such toys as plaintiff's product.

In Equity. Suit by the Moline Pressed Steel Company against Davis & Voetsch, Inc. On plaintiff's motion for preliminary injunction. Motion denied.

Weill, Wolff & Satterlee, of New York City (George I. Haight, of Chicago, Ill., of counsel), for plaintiff.

Edward A. Kenney and Lucius B. Weymouth, both of New York City, for defendant.

THACHER, District Judge. This is a motion for preliminary injunction in a suit for unfair competition in the sale of toys. The plaintiff, since 1921, has been engaged in manufacturing and selling throughout the United States toys which are made in replica of automobile trucks, express wagons, tank trucks, steam derricks, etc. It is claimed that these toys, strongly constructed of sheet metal and designed to be operated or drawn by hand, were first introduced on the American market by the plaintiff, and that because of the novelty and strength of their construction there has been an increasing demand for such toys, which became known to the purchasing public as the product of the plaintiff's manufacture. They have been sold under the distinctive trade-name "Buddy

'L.'" Prior to March, 1924, the defendant, a jobber of toys, was engaged in selling toys for the plaintiff on commission; but at or about that date differences arose between the parties, and their relations were severed. Thereafter the defendant made arrangements with another toy manufacturer for the manufacture of similar toys, which it has sold under the distinctive trade-name "Sturditoy."

[1] Suit is founded upon a charge of unfair competition, in that the defendant's toys are constructed and painted in simulation of the plaintiff's toys, so as to lead the ordinary purchaser to believe that in purchasing them he is purchasing genuine "Buddy 'L'" toys, made and sold by the plaintiff. Claim of simulation is rested upon four types, namely, an express wagon, a tank truck, a dump truck, and a steam shovel. Upon the motion, a "Buddy 'L'" and a "Sturditoy" of each type were submitted as exhibits. While certain features of construction are common to the "Buddy 'L'" and the "Sturditoys," visual comparison at once discloses that the features which distinguish the defendant's toys from those of the plaintiff in each case are quite sufficient to remove from the mind of the ordinary purchaser any impression that the toys are the product of the same manufacturer. Thus, while the two express wagons have black hoods and red frames and wheels, the bodies are of strikingly different colors and one is marked "Buddy 'L' Line" while the other is marked "American Railway Express." Furtherfore, the defendant's toy bears the legend, "Sturditoys, Made by Pressed Metal Co., Pawtucket, Rhode Island," and at the top of the radiator the name "Sturditoy" is prominently displayed. It appears from the defendant's affidavits that this model was actually copied from an American Railway Express truck.

In the two oil tanks and in the two dump carts the hood and driver's seat are in black and the frame and wheels are in red; otherwise, there is no similarity apparent upon casual inspection, except such as would necessarily result in making two replicas of the same thing of about the same size. In the one case the oil tank is prominently marked "Sturdy Oil Co.," and in the other "Buddy 'L' Tank Line." Except for similitude in the coloring of the hood, the driver's seat, frame, and wheels, which are in black and red, the defendant's dump cart is quite distinctive in the coloring of its body, and has prominently displayed thereon "Sturditoy Construction Co." The steam shovels, aside from similarity of construction, are even more distinctive in appearance, and in the one case the steam shovel is prominently marked "Sturditoy Contracting Co." and in the other "Buddy 'L' Steam Shovel." They are plainly replicas of the types of steam shovel used in excavation work, with which most city children are familiar.

[2] The affidavits submitted by plaintiff in support of its claim of actual confusion in the sale of these toys seem to me to indicate that the purchasers of "Sturditoys" have not been deceived or induced to believe that they were purchasing toys manufactured by the plaintiff. Certainly no one desiring to purchase a "Buddy 'L'" toy because of its reputation would fail to note the plain and distinctive markings upon the defendant's toys. Toys are made for children, who wish to make believe, and so they must be made in replica of familiar objects, as the construction trucks, express wagons, steam shovels and tank trucks here in question are made. If it is true that the plaintiff's toys were of novel construction and were made of sheet metal, so as to be better imitations of the real thing and much stronger than toys previously on the market, and if it is true that because of their novelty such toys became associated in the public mind with the plaintiff as a source, in the absence of a grant of patent rights, these facts can give the plaintiff no right to prevent others from manufacturing and selling similar toys, provided they do not palm off their toys as those of the plaintiff. Others being free to make toys constructed of the same materials and in replica of the same objects as the plaintiff's toys, similarities in form and appearance are unavoidable in the exercise of free and fair competition, and such confusion as may result is inherent in the right to compete at all.

Such similarities as have been shown are not in dressing the articles for sale, but in the articles themselves. To enjoin the defendant from doing what is complained of would engross the business for the benefit of the plaintiff, who is entitled to no monopoly. The principles controlling decision in this case have been too often declared to require further discussion. Meccano, Ltd., v. Wanamaker (C. C. A.) 250 F. 450; John H. Rice & Co. v. Redlich Mfg. Co. (C. C. A.) 202 F. 155, 44 L. R. A. (N. S.) 1057; Miller Rubber Co. v. Behrend (C. C. A.) 242 F. 515.

Motion denied.