### ZANGERLE & PETERSON CO. v. VENICE FURNITURE NOVELTY MFG. CO.
### No. 8044.

Circuit Court of Appeals, Seventh Circuit.

Jan. 26, 1943.

J. Bernhard Thiess and Bertram Wm. Coltman, both of Chicago, Ill., for appellant.

Bernard A. Schroeder, Samuel A. Karlin, and George A. Chritton, all of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

This is a suit to enjoin the infringement of a patent and to recover damages therefor; and in the alternative, for the same relief for alleged unfair competition. The trial court found the patent invalid and the charges as to unfair competition not sustained, and dismissed the complaint. The plaintiff appeals.

The first question we are required to decide is as to the validity of the patent. If the patent is valid, infringement is admitted.

The patent No. 126,548 was issued April 8, 1941, to John W. Wilson on his application filed February 4, 1941, and the plaintiff is now the owner thereof. The term of the patent is for three and one-half years, and covers a design for a lamp table known in the plaintiff's line of merchandise as No. 510. In the application for the patent, the applicant amended the dominant features clause therein to read: "The dominant features of the design comprise a table provided with a top having rolled ends, the sides below the top having lower edges that converge toward the rolled ends beginning at a medial point, there being curved legs that extend downwardly from said top which are provided with carved motifs at their upper ends."

The Patent Office called attention to Furniture Age, a trade publication, of February 1940, and a table which the plaintiff was then manufacturing, and advertising and offering for sale in this publication. This was a cocktail table, No. 456. The Patent Office rejected the application on February 18, 1941 for the following reason: "The design is lacking in patentable invention as it involves a mere modification of the top and legs of the tall table along the lines clearly taught in the low table of the publication reference."

The Patent Office also recommended that the dominant features clause be eliminated. On March 6, 1941, applicant amended his application by cancelling out the dominant features clause, and raised the question that although the issue of Furniture Age in question was the February 1940 issue, the date of this issue was not conclusive proof that it was actually published more than a year before the filing date of the application, February 4, 1941.[1]

The Patent Office responded with a copy of Furniture Age of January 1940 with the same advertisement in it, and again advised the elimination of the dominant features clause, stating:

"The present 'dominent (sic) features' clause should accordingly be canceled or amended so as to confine it to a new feature or features which distinguish it in an ornamental sense from the cited art. * * *

"As presented, the design is lacking in patentable invention as it involves a mere modification of the top and legs of the tall table along the lines clearly brought out in the low table of the January, 1940 'Furniture Age' publication reference."

The Patent Office had overlooked the applicant's amendment of March 6, 1941, eliminating the dominant features clause, but it nevertheless pointed out the unpatentability of the design. The Patent Office, after having had called to its attention the elimination of the dominant features clause, granted the patent.

If the application with the statement of the dominant features of the design in it spelled unpatentability because they read upon a design that was public property, it is difficult for us to understand how the striking out of the statement of the dominant features makes it patentable. It is apparent that the dominant features, the essence of the design of lamp table No. 510, read squarely upon and are the dominant features of cocktail table No. 456. In other words, lamp table No. 510 is cocktail table No. 456 with a shorter, narrower top and longer legs, and with a shelf about half-way between the top and the floor. Nothing is claimed for the shelf, and could

not be, as it is as old as the type of table itself.

Was this "invention"? We think not. Design patents, like mechanical patents, must show originality and the exercise of inventive faculty. It is not sufficient to take old designs or forms and adapt them to new purposes. As we said in Howell Co. v. Royal Metal Mfg. Co., 7 Cir., 93 F. 2d 112, 113:

"To entitle a party to the benefit of the statute, 35 U.S.C.A. § 31, the device must not only be new, but inventively new. The readaptation of old devices or forms, however convenient, useful, or beautiful they may be in their new roles, is not invention. Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606.

"We are of the opinion that the present case comes within the rule thus announced, and that plaintiff's particular redesign or re-creation exhibited no invention. In view of the prior art, only the ordinary skill of a designer of chairs was necessary, in order to achieve the design of the patent."

Again, in S. Dresner & Son, Inc., v. Doppelt et al., 7 Cir., 120 F.2d 50, 51, we stated: "By the terms of the present Act patentable design for an article of manufacture must be characterized by an invention of a new, original and ornamental design. The mere production of such a design is not sufficient. The word 'produced' which appeared in the earlier enactments has disappeared from the present Act, and there is no authority to substitute it for the word 'invented,' and thereby qualify the usual concept of invention. However, the words 'invented' and 'new' and 'original' must be construed together in applying the usual rule that there must be an exercise of inventive genius, which precludes the grant of patent monopoly upon the exercise of mere skill of an ordinary designer who is chargeable with knowledge of the prior art."

The plaintiff did not *invent* the design of the lamp table No. 510. It *produced* it from the prior art design of cocktail table No. 456. The reducing of the size of the table, lengthening the legs and putting in the shelf were the exercise of the mere skill of an ordinary designer in the trade. The ideas were old and at hand; the skilled designer had only to use them. The use made of them in the instant case did not introduce a new creation. The trial court properly held that the patent was invalid.

This brings us to a consideration of the second phase of the case: Was there unfair competition? The defendant frankly admits it copied the plaintiff's table. If the plaintiff never had a patent, then the mere act of copying did not amount to unfair competition. After a patent expires, one may copy it. It then belongs to the public. The patentee's monopoly is gone. Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118. If one never had a patent, the situation is exactly the same. Copying a design not patentable is not unfair competition. Sinko v. Snow Craggs Corp., 7 Cir., 105 F.2d 450.

There is no evidence that the defendant represented its goods as the goods of the plaintiff. In other words, there was no act of "palming off" by the defendant. It is argued by the plaintiff that even though the patent was invalid, the defendant by copying it had put it in the power of its dealers to "palm off" the defendant's table as the plaintiff's—in other words, that the defendant was guilty of "contributory" unfair competition.

It is admitted that the Illinois law governs this issue. We have found no case decided by Illinois courts or elsewhere that recognizes the existence of this novel doctrine of "contributory" unfair competition. If one does what he has a legal right to do, as in the case at bar, copying an article of merchandise that is not covered by a valid patent, but does not represent the copies as the product of the party making the original and does nothing in the merchandising of the goods to induce one's customers to engage in "palming off" or to indicate to them how they may "palm off" the copy as the product of the original maker, such conduct is not illegal and does not amount to unfair competition, nor could it be stretched into the novel doctrine of "contributory" unfair competition. Even in contributory infringement of a patent, the infringer can be liable as such only when he knowingly participates in the infringement. Mid-Continent Investment Co. v. The Mercoid Corporation, 7 Cir., 133 F.2d 803.

The essence of unfair competition is fraud. Hughes v. West Publishing Co.. 225 Ill.App. 58, 66; Ambassador Hotel

Corp. v. Hotel Sherman Co., 226 Ill.App. 247, 265. And like fraud, it is never presumed, and its existence must be established by a clear preponderance of the evidence. Ball v. Siegel, 116 Ill. 137, 147, 4 N.E. 667, 56 Am.Rep. 766; Stevens-Davis Co. v. Mathers Co.; 230 Ill.App. 45.

 Since there was no actual "palming off" by the defendant, or evidence that it knowingly did anything to induce or assist another to do so, there can be no unfair competition unless the plaintiff has clearly established that its table had acquired in the trade a secondary meaning, in which event the mere copying may be unfair competition. To establish secondary meaning, the article itself must be so clearly identified with its source that its supply from any other source is clearly calculated to deceive the public and lead it to purchase the goods of one for that of another. Sinko v. Snow Craggs Corp., 7 Cir., 105 F.2d 450. To acquire a secondary meaning in the minds of the buying public, an article of merchandise when shown to a prospective customer must prompt the affirmation, "That is the article I want because I know its source," and not the negative inquiry as to, "Who makes that article?" In other words, the article must proclaim its identification with its source, and not simply stimulate inquiry about it. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73.

The plaintiff has been in the business of manufacturing high-grade furniture for seventy years, and enjoys a good reputation. Table No. 510 first appeared in April, 1940. It had no marks of identity as to the source, except a plate underneath the top and the number 510 branded into the bottom of the shelf. In the year and a half the table was on the market, the plaintiff had been able to market less than a thousand of them, most of which were sold in New York. There was evidence of two or three dealers that a few customers came in and asked for Zangerle & Peterson lamp tables and described the design. While this tends to show that these few customers knew the plaintiff made such a table, it does not show whether these customers desired merely a lamp table of this design, or one made by Zangerle & Peterson. There was also evidence that one customer saw the plaintiff's table in a Fifth Avenue shop in New York and liked it. She inquired the name of the manufacturer and was told it was Zangerle & Peterson. She shopped around and finally bought two of the defendant's tables at another place. She did not ask and was not told who manufactured the tables she bought. She picked out the table she liked. Whether it was because of the design or the maker does not appear.

 We have considered all of the evidence in this case, and we are satisfied that the trial court's finding that the plaintiff's lamp table No. 510 had not acquired a secondary meaning in the trade is not clearly erroneous. In the absence of actual "palming off" or the existence of a secondary meaning in the trade, the copying by the defendant of the plaintiff's unpatented design did not amount to unfair competition. Where no one has the exclusive right to the use of a design, all may use it with impunity, so long as the public is not misled in the methods of marketing the product. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 119, 59 S.Ct. 109, 83 L. Ed. 73.

The trial court did not err in entering judgment dismissing the plaintiff's complaint. The judgment is affirmed.