MASTERCRAFTERS CLOCK &
RADIO CO.

v.

VACHERON & CONSTANTIN–LE COUL-
TRE WATCHES, Inc. (Jaeger Le Coul-
tre, S. A., Intervenor-Counterclaimant).

Civ. A. No. 79–383.

United States District Court
S. D. New York.

March 1, 1954.

As Corrected March 11, 1954.

**210**

Harry Meisnere, New York City, for plaintiff. Clarence E. Threedy and Edward C. Threedy, Chicago, Ill., of counsel.

Goodwin, Danforth, Savage & Whitehead, New York City, for defendant and intervenor-counterclaimant. Pennie, Edmonds, Morton, Barrows & Taylor, William F. Clare, Jr., W. Brown Morton, Jr. and Stanton T. Lawrence, Jr., New York City, of counsel.

McGOHEY, District Judge.

The plaintiff seeks a declaratory judgment that it is not unfairly competing with the defendant; damages allegedly resulting from suits by the defendant against the plaintiff's distributors; an injunction to restrain the prosecution of such suits.

The defendant, in a counterclaim in which the intervenor joins, charges unfair competition by the plaintiff and asks damages and an injunction.

At trial to the Court alone, the parties stipulated to try only the issue of liability, leaving questions of damages for later determination.

The facts found by the Court and the conclusions of law follow.

Mastercrafters Clock & Radio Co. (hereafter called Masters) is an Illinois corporation. Vacheron-Constantin Le Coultre Watches, Inc. (hereafter called Vacheron) is a New York corporation. Jaeger-Le Coultre, S. A. (hereafter called Jaeger) is a Swiss corporation.

The amount in controversy exceeds $3,000. The Court has jurisdiction of the parties and subject matter.

Since some time prior to 1937 a Swiss corporation, Le Coultre & Cie, S. A. (hereafter called Le Coultre Co.), not a party to this action, has manufactured a clock unique in the horological world by reason of its source of energy. Although spring driven, it is so contrived that the spring is wound by very slight changes in the temperature of the atmosphere. No manual winding or other external source of energy is required. These features induced the manufacturer at an early date to name the clock "Atmos—the Perpetual Motion Clock."

Initially it was made in a variety of designs, but by 1937 it was determined

to give so unique a mechanism a distinctive outward appearance. Accordingly, the old designs were withdrawn and replaced by the one still in use which is the subject of this suit. It is a simple, yet elegant open-dial model made of brass, set on a brass base and covered by a detachable case consisting of four crystal sides and a crystal top set in a brass framework.

Neither the mechanism nor the design has been patented. The name Atmos, however, which is always used to describe this atmospherically operated clock, has been registered in the United States Patent Office, as the property of Establissements Ed. Jaeger of France. It was assigned to Jaeger after this suit was commenced.

Le Coultre Co., the manufacturer, has no sales organization. Jaeger, the intervenor herein, is the sole sales outlet for all Le Coultre Co. products, including the Atmos clock. In 1939 Jaeger in a written contract granted Vacheron the right to sell and advertise the Atmos clock in the United States. This right, however, was not exclusive. The contract reserved to Jacques Cartier, Inc. of New York the right, granted some time in 1937 or before and which it at all times since has exercised, to import and sell Atmos clocks in the United States at retail under the name "Cartier" which appears prominently on the dial of all the Atmos clocks so sold.

Since 1939, all Atmos clocks, other than Cartier's, sold and displayed in the United States, have been imported by Vacheron and have borne prominently on the dial the name "Le Coultre" which during the life of their contract Jaeger has authorized Vacheron to use. "Le Coultre" is registered in the United States Patent Office as the property of Le Coultre Co., the manufacturer.

Vacheron is a wholly owned and controlled subsidiary of Longines-Wittnauer Watch Co., Inc. of New York (hereafter called Longines), not a party to this action. All Vacheron's accounts are carried in the books of Longines which handles all Vacheron's finances. From 1939 to 1949 Vacheron had no sales force of its own and the Atmos clocks it imported during those 10 years were advertised by Longines and sold by the latter's sales force. Payments were made to and received by Longines. Since 1949, however, a separate sales staff which is paid by Longines has been assigned to Vacheron. Payment for Atmos clocks sold by this staff is still sometimes made to and received by Longines. Since 1949, both Vacheron and Longines have advertised the Atmos as the "Le Coultre Atmos—The Perpetual Motion Clock."

From its introduction into the United States in 1937 by Jacques Cartier, Inc. until 1949, the retail price of all the Atmos clocks sold here was $315. Extensive retooling of the Swiss factory in 1949 resulted in increased production at lower cost. The price was then reduced to $165. This was later increased to the present price of $175.

Masters is a manufacturer of electrically operated clocks which it sells only to retail and wholesale jewelers throughout the United States. In January 1952, Masters commenced production of a clock known as its Model 308, which it introduced to the trade in July of the same year. This is an electrically operated clock and bears the seal of approval of the Electrical Underwriters' Laboratory, Inc. The Model 308, although in external appearance practically an exact copy of the Atmos, has the following prominent distinguishing features: (1) there is clearly visible, extending from the rear of the base, an electric cord equipped for attachment to an outlet of suitable current; (2) the name "Mastercrafters" is embossed or etched on the dial approximately at the place where either "Cartier" or "Le Coultre" appears on the Atmos; (3) "Made in U. S. A." is embossed on the dial, whereas the Atmos bears the legend "Made in Switzerland"; (4) there are various adhesive labels affixed to the case and works bearing the name and trademark of Mastercrafters and advising the purchaser that "This 'Mastertime' Elec-

tric Clock operates only on 110 volt, 60 cycle, A. C. current."; (5) when in operation the pendulum of the Model 308 rotates whereas that of the Atmos oscillates.

The Atmos is always advertised under that name as an unique clock operated by changes in atmospheric temperature. The Model 308 has never been described or represented as the Atmos but is always described and advertised as a clock operated by electricity. Both clocks are packed in distinctive cartons plainly marked with the shipper's name and trade-mark and there is no serious claim that there is any likelihood of confusion arising from the packaging, especially since the clocks are not sold packaged at retail.

In the fall of 1952, shortly after the introduction of the Model 308, Vacheron, by telegram, notified Masters [1] and some 18 of its customer-distributors to "cease all sale or offer for sale of Mastercrafters Model 308 clock. Model 308 is a flagrant counterfeit of the distinctive appearance and configuration of our long-established Atmos clock. Unless we receive your agreement as above we must necessarily instruct our attorneys to proceed promptly to protect our interests." Following this notice Vacheron commenced state court actions against seven of Masters' distributors for damages and injunction. In verified complaints Vacheron alleged in part that "it and its parent Longines-Wittnauer Watch Co., Inc. * * * have been since 1939, the sole distributors in the State of * * * and the United States of a certain design of precision clock powered by changes in atmospheric temperature and glass encased, which it and its parent have always sold, and it is now selling, under the 'Le Coultre' tradename and identified by the trade-mark 'Atmos' ".

Subsequent to the institution of these suits substantial orders for Model 308 were cancelled by distributors.

Masters countered by bringing the present action in which, prior to the trial, Jaeger was permitted to intervene as counterclaimant.

Large sums have been spent by Longines to advertise the "Le Coultre" Atmos in the United States, and extensive world-wide advertising has been done by Jaeger.

Prior to the introduction of Model 308 in July, 1952, the Atmos, whether designated "Cartier" or "Le Coultre," was readily distinguishable from all other clocks then on the market by virtue of its appearance alone as well as by its unique mechanism. Business concerns have frequently chosen the "Le Coultre" Atmos because of its outstanding appearance and performance as a presentation piece for merit awards.

In a survey of 249 dealers conducted by Vacheron while this litigation was pending each was shown a photograph of an Atmos with the name on the dial obliterated. 210 named Le Coultre as the maker. Of the remainder, some named Longines, others United Watch Co., and others didn't know the maker. It was not shown whether these dealers or any of them were Vacheron customers who might be presumed to know the manufacturer.

Three unidentified customers at separate unspecified times inquired about "the lower priced Atmos."

An unspecified number of unidentified persons said at various unstated times that they knew where they "could get [a clock] for $30 or $40 just like it [the Atmos]."

On two or three occasions the Model 308 has been described as "a copy of

---

**1.** The telegram to Masters, dated July 1952, read as follows: "We demand that you withdraw from the market all Mastertime clocks advertised Page 56 July 1952 issue of Jewelers Circular Keystone as they constitute a flagrant imitation of our well known and distinctive Atmos clock. Advise of your intentions immediately as we have instructed our attorneys to take promptly all steps to protect our interest."

the Atmos"; once by a Masters' representative at an exhibit in Chicago; on the other occasions by distributors of the Model 308.

Since the introduction of the Model 308, Vacheron's salesmen have encountered considerable sales resistance and sales of the "Le Coultre" Atmos have fallen off.

■ The foregoing undoubtedly proves the uniqueness, and even the esthetic qualities of the Atmos, but it hardly establishes secondary meaning[2] which I apprehend to be an identification of an object of commerce with a single source —even though unnamed—and an interest on the part of the consuming public in buying because of that source.[3] Although, through advertising, some members of the public appear to be aware of the fact that there is an uniquely designed atmospherically operated clock on the market, there is no evidence that the public attributes that clock to a single source. On the contrary, the evidence shows that the Atmos is and has been identified with two trade names, "Cartier" since 1937 and "Le Coultre" since 1939; that it was advertised in this country by both Longines and Vacheron and abroad by Jaeger. The most that can be inferred from the facts as found

is that the public identified the product and not the producer.[4] There was no evidence to show that the public cared what was the ultimate source of the clock and even trade witnesses who might be presumed to know, while recognizing the design as that of the atmospheric clock, were confused as to who was the manufacturer or even who was the American distributor. Nor was the corporate interrelationship of Vacheron and Longines generally known even in the trade.

■ I find accordingly that no secondary meaning has attached to the "design, configuration and appearance" of the Atmos clock.

■ In the absence of secondary meaning, of course, even slavish imitation of an unpatented design is not actionable.[5] But even if the design had acquired a secondary meaning and assuming that Vacheron or Vacheron and Jaeger jointly have an interest entitling them to maintain their counterclaim, it is difficult to see the unfair competition they complain of.

■■ The gist of unfair competition is unlawful interference with the business of another, not merely the natural interference occasioned by lawful com-

2. Lewis v. Vendome Bags, Inc., 2 Cir., 1939, 108 F.2d 16, 18, certiorari denied 1940, 309 U.S. 660, 60 S.Ct. 514, 84 L. Ed. 1008; Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 6 Cir., 1916, 235 F. 657, 668ff; J. C. Penney v. H. D. Lee, 8 Cir., 1941, 120 F.2d 949, 955; Briddell v. Alglobe Trading Corp., 2 Cir., 1951, 194 F.2d 416, 418; Columbus Plastic Products v. Rona Plastic, D.C.S.D. N.Y.1953, 111 F.Supp. 623, 624; American Merri-Lei Corp. v. Jet Party Favors, Sup.,1953, 123 N.Y.S.2d 136, 137, 139.

3. Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L. Ed. 73; Crescent Tool Co. v. Kilborn, 2 Cir.,1917, 247 F. 299, 300; American Fork & Hoe Co. v. Stampit Corp., 6 Cir., 1942, 125 F.2d 472, 475; Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 1943, 133 F.2d 266, 270; Lucien Lelong v. Lander, 2

Cir.,1947, 164 F.2d 395, 397; Columbus Plastic Products, Inc. v. Rona Plastic Corp., D.C.S.D.N.Y.1953, 111 F. Supp. 623, 625ff; Mavco, Inc. v. Hampden Sales Ass'n, 1948, 273 App.Div. 297, 77 N.Y.S.2d 510, 515.

4. Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L. Ed. 73; Steem Electric Corp. v. Herzfeld-Phillipson, 7 Cir.,1940, 118 F.2d 122, 126; Mavco, Inc. v. Hampden Sales Ass'n, 1948, 273 App.Div. 297, 77 N.Y. S.2d 510, 516.

5. A. C. Gilbert Co. v. Shemitz, 2 Cir.,1930, 45 F.2d 98, 100; Zangerle & Peterson v. Venice Furniture Novelty Mfg. Co., 7 Cir.,1943, 133 F.2d 266, 270; Briddell v. Alglobe Trading Corp., 2 Cir.,1952, 194 F.2d 416, 419; Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc., D.C.1953, S.D. N.Y., 110 F.Supp. 694, 697.

petition. Unlawfulness lies in fraudulently inducing the public to buy the wares of the junior competitor believing it is buying those of the senior.[6] The essence of the wrong is thus two-pronged, the public itself is misled, possibly although not necessarily to its detriment, and the senior competitor is unfairly deprived of customers to whose trade he was legitimately entitled. Lacking direct evidence of diversion of customers, the senior competitor must show at least such confusion among members of the buying public as would warrant an inference of such diversion.[7] While some cases hold that a similarity which has deceived even a negligent, careless or casual observer is sufficient,[8] usually items purchased in those cases were ordinary everyday commodities to the selection of which even the careful shopper brings only slight attention. Such decisions are not therefore in conflict with those holding that all facets of the transaction must be considered,[9] e. g. the intelligence, comparative wealth, age and position in society of the purchaser, the frequency, circumstances and locale of the transaction, and these, too, in connection with merchandise of the particular type, price range and utility.

That such confusion could exist here is inconceivable in view of the distinguishing features described above. These are unavoidably observable by any purchaser giving the clock even the minimum scrutiny which it must be assumed would be given by a purchaser of a clock in the $175 or even the $40 price range. Even if the dealer did not handle both clocks, so that a visual comparison would be impossible—and it seems probable that in most instances dealers did not—the Atmos is featured as a Swiss-made, atmospherically-operated clock. It always bears either the name "Cartier" or "Le Coultre" and during the period here relevant has been advertised at a price of $165 or $175. Moreover "Atmos, the perpetual motion clock," has had wide publicity in newspapers, trade journals, popular magazines and jewelers' displays.

6. Leschen & Sons Rope Co. v. Fuller, 8 Cir., 1914, 218 F. 786, 789, affirmed A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710; Lewis v. Vendome Bags, Inc., 2 Cir., 1939, 108 F.2d 16, 18, certiorari denied 1940, 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008; Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 6 Cir., 1916, 235 F. 657, 668; Dupont Cellophane Co. v. Waxed Products Co., 2 Cir., 1936, 85 F.2d 75, 76; Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 1943, 133 F.2d 266, 269; Bayer Co. v. United Drug, D.C.S.D.N.Y.1921, 272 F. 505, 509; Parrot Speed Fastener Corp. v. E. W. Carpenter, D.C.Conn. 1939, 26 F.Supp. 622, 623; Lelong v. George W. Button, D.C.S.D.N.Y.1943, 50 F.Supp. 708, 710; Book-of-the-Month Club v. Childrens Book & Record, D.C. S.D.N.Y.1953, 112 F.Supp. 151, 153; Mavco, Inc. v. Hampden Sales Ass'n, 1948, 273 App.Div. 297, 77 N.Y.S.2d 510.

7. General Time Instrument Corp. v. U. S. Time Corp., 2 Cir., 165 F.2d 853, 855, certiorari denied 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770; American Fork & Hoe Co. v. Stampit Corp., 6 Cir.,1942, 125 F.2d 472, 475; Lucien Lelong v. Lander, 2 Cir., 1947, 164 F.2d 395, 397; Briddell v. Alglobe Trading Corp., 2 Cir.,

1952, 194 F.2d 416, 419; Columbus Plastic Products v. Rona Plastic, D.C.S.D. N.Y.1953, 111 F.Supp. 623, 626; Mavco, Inc. v. Hampden Sales Ass'n, 1948, 273 App.Div. 297, 77 N.Y.S.2d 510, 515.

8. Pillsbury v. Pillsbury-Washburn, 7 Cir., 1894, 64 F. 841; De Voe Snuff Co. v. Wolff, 6 Cir., 1913, 206 F. 420; Ward Baking Co. v. Potter-Wrightington, 1 Cir.,1924, 298 F. 398; J. C. Penney v. H. D. Lee, 8 Cir., 120 F.2d 949; American Chicle Co. v. Topps Chewing Gum, Inc., 2 Cir., 1953, 208 F.2d 560.

9. Leschen v. Fuller, 8 Cir.,1914, 218 F. 786, 790, affirmed A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 26 S.Ct. 425, 50 L. Ed. 710; Seven-Up Co. v. Cheer Up Sales Co., 8 Cir., 1946, 153 F.2d 231, 232, certiorari denied 326 U.S. 727, 66 S.Ct. 32, 90 L.Ed. 431; N. K. Fairbanks v. R. W. Bell, 2 Cir., 1896, 77 F. 869, 871; Hygrade Food Products Corp. v. H. D. Lee, 10 Cir., 1931, 46 F.2d 771, 773; Fawcett Publications v. Popular Mechanics, 3 Cir., 1935, 80 F.2d 194, 198; Lelong v. George W. Button Corp., D.C.S.D.N.Y., 50 F.Supp. 708, 710; Luxor Cab Mfg. Corp. v. Leading Cab Co., 1925, 125 Misc. 764, 211 N.Y.S. 886, affirmed 215 App. Div. 798, 213 N.Y.S. 847.

as an unique mechanism that works on atmospheric conditions, without electricity, without winding, and runs forever. This uniqueness is further emphasized by cross-section cut-a-way dealer displays showing in detail the operation of the mechanism. The advertising of the "Le Coultre" Atmos always emphasizes its unique mechanical principle, never the design alone. That a customer seeking such a particular clock could possibly mistake for it an electrically operated clock, made in U. S. A., bearing the name "Mastercrafters" and the Electrical Underwriters Laboratories' seal of approval of the electrical mechanism and selling for $40 is beyond imagining. The fact that three customers inquired as to "The lower priced Atmos" is as much proof that the discrepancy in price is a warning signal as it is that the consumers were confused. Such a shopper upon inquiry and inspection is immediately disabused of the notion that there is a lower priced "Atmos"; that name always connotes the perpetual motion clock operated by changes in atmospheric temperature. He is obviously attracted by the design merely and not by the fact that the Atmos is identified with either Le Coultre or Cartier. Surely such a shopper is not a potential purchaser lost to Vacheron by Masters' alleged deception. The same is true of the shoppers who said they knew where they "Could get [a clock] for $30 or $40 just like it [the Atmos]." This established cliche of the inveterate shopper may indicate a willingness to haggle but it does not persuade me that anyone really believed he could get the $175 Atmos for $30 or $40. There is no evidence whatever that Masters ever represented its Model 308 to be the Atmos or the product of anyone other than itself. Indeed the evidence is to the contrary for Masters' clocks are plainly marked and advertised as their own.

■ I find accordingly that Vacheron has failed to establish that purchasers have been or are likely to be confused.

■ Masters undoubtedly intended to and did avail itself of an eye-catching design and hoped to cater to the price conscious purchaser who desires to own a copy of a luxury design clock regardless of mechanism or source. But such imitation alone is not unfair competition in the legal sense.[10] Here it does not even amount to "the free-ride" sanctioned by some cases,[11] in view of which it is doubtful that such a clock, embody-

10. Electric Auto-Lite Co. v. P & D Mfg. Co., Inc., 2 Cir., 109 F.2d 566, 567, certiorari denied, 296 U.S. 648, 56 S.Ct. 310, 80 L.Ed. 461, rehearing denied 296 U.S. 665, 56 S.Ct. 380, 80 L.Ed. 474; Lewis v. Vendome Bags, Inc., 2 Cir.,1939, 108 F.2d 16, 18, certiorari denied 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008; Millinery Creators' Guild, Inc. v. Federal Trade Commission, 2 Cir.,1940, 109 F.2d 175, 177, affirmed 312 U.S. 469, 61 S.Ct. 708, 85 L.Ed. 397; General Time Instrument Corp. v. U. S. Time Corp., 2 Cir.,1948, 165 F.2d 853, 854, certiorari denied 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770; Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir.,1943, 133 F.2d 266, 268; Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., 2 Cir., 147 F.2d 500, 503; Lucien Lelong v. Lander, 2 Cir., 1947, 164 F.2d 395; Champion Spark Plug v. A. R. Mosler, D.C.S.D.N.Y.1916, 233 F. 112, 115ff; Moline Pressed Steel v. Davis, D.C.S.D. N.Y.1927, 21 F.2d 577, 578; Parrot Speed Fastener Corp. v. E. W. Carpenter Mfg., D.C.Conn.1939, 26 F.Supp. 622, 623; Mastercrafters Clock & Radio Co. v. Vacheron Constantin-Le Coultre Watches, Inc., D.C.S.D.N.Y.1953, 110 F.Supp. 694, 697; Miss Susan, Inc. v. Enterprise Century Undergarment Co., 270 App.Div. 747, 62 N.Y.S.2d 250, affirmed, 1947, 297 N.Y. 512, 74 N.E.2d 461; Mavco, Inc. v. Hampden Sales Ass'n, 273 App.Div. 297, 77 N.Y.S.2d 510; American Merri-Lei Corp. v. Jet Party Favors, Sup., 123 N.Y.S.2d 136, 139.

11. Millinery Creators' Guild v. Federal Trade Commission, 2 Cir.,1940, 109 F.2d 175, 177, affirmed 312 U.S. 469, 61 S. Ct. 708, 85 L.Ed. 955; Briddell v. Alglobe Trading Corp., 2 Cir.,1952, 194 F.2d 416, 419; Mastercrafters Clock & Radio Co. v. Vacheron Constantin-Le Coultre Watches, Inc., D.C.S.D.N.Y.1953, 110 F.Supp. 694, 697; Mavco, Inc. v. Hampden Sales Ass'n, 273 App.Div. 297, 77 N.Y.S.2d 510.

ing the same mechanism at substantially the same price but plainly marked as the product of Masters, would form the basis of a claim for unfair competition. Certainly under the facts here mere similarity does not constitute unfair competition. Douglas Laboratories Corp. v. Copper Tan, Inc.[12] is not to the contrary.

■ Vacheron, relying on recent New York [13] and Federal cases [14] urges that, by its contract with Jaeger, it acquired a valuable property right in the Atmos design; that Masters has by pirating the design interfered with that property right; and that such interference is actionable. These decisions have no application to the facts of this case. The contract with Jaeger gave Vacheron the right to import and sell Atmos clocks under the name "Le Coultre" but only in competition with Jacques Cartier, Inc. which was then and had been for two years importing and selling identical clocks under the name "Cartier." As soon as Vacheron began to exercise whatever right in the Atmos design it got under this contract, it effectively prevented that design from indicating any single source and made the design available for anyone to copy who did not misrepresent its source. Thus no right of Vacheron or Jaeger was invaded by Masters.

Accordingly Masters is entitled to judgment that it is not unfairly competing with Vacheron and dismissing the counterclaim. It is also entitled to an injunction permanently restraining Vacheron from prosecuting present or future state court actions against Masters' customers and from any other form of harassment of such customers in regard to the sale and distribution of the Model 308 clock.

In view of this conclusion, it is unnecessary to consider whether Vacheron and Longines have, as Masters charges, violated any provision of the Antitrust laws.

■ There remains Masters' claim that it was damaged by the suits against its customers. In order to sustain this claim Masters must show that Vacheron acted in bad faith in bringing the suits.[15] Vacheron took the steps which at the time seemed sure to eliminate Masters' competition. Lack of good faith depends on whether Vacheron clearly had no interest entitled to protection, and knew or should have known this to be so; or if the steps it took in self-defense were, on general principles, improper. Plaintiff has attempted to show lack of good faith on both grounds. It complains that if Vacheron had been acting in good faith it would have proceeded first against Masters alone. But if Vacheron had an interest entitled to protection this course might not be adequate. Unless enjoined, Masters could have continued distribution during suit, and in any event its customer-retailers could have continued to sell the Model 308 clocks already in their possession with possible consequent damage to defendant's custom and business reputation beyond compensation in money. The defendant naturally enough therefore sought to stop the threat immediately at the retail level and thus protect its market most effectively. That, if it stood alone, might be insufficient to sustain a charge of bad faith. But, as the plaintiff stresses, there was much more.

12. Douglas Laboratories Corp. v. Copper Tan, Inc., 2 Cir., 1954, 210 F.2d 453.

13. Fisher v. Star, 231 N.Y. 414, 132 N.E. 133, 19 A.L.R. 937; Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., 199 Misc. 786, 101 N.Y.S.2d 483, affirmed 279 App.Div. 632, 107 N.Y.S.2d 795.

14. Pittsburgh Athletic Co. v. KQV Broadcasting Co., D.C.Pa.1938, 24 F.Supp. 490; Supreme Records v. Decca, D.C. Cal.,1950, 90 F.Supp. 904; Capitol Records v. Mercury Record Corp., D.C.S.D. N.Y.1952, 109 F.Supp. 330.

15. Maytag Co. v. Meadows Mfg. Co., 7 Cir., 35 F.2d 403, 408, ff.; Circle S Products v. Powell Products, Inc., 7 Cir., 1949, 174 F.2d 562; Mastercrafters Clock & Radio Co. v. Vacheron Constantin-Le Coultre Watches, Inc., D.C. S.D.N.Y.1953, 110 F.Supp. 694, 698; Walters v. Clairemont, 1926, 242 N.Y. 521, 152 N.E. 410.

Vacheron alleged in its complaints that it and its parent were sole distributors in the United States of a clock of a certain design, although it well knew from its contract with Jaeger that Cartier also was a distributor of clocks of identical design bearing its own name. Defendant fails to meet the charge or explain its conduct, other than to deny it acted in bad faith. Mere denial is not enough to overcome the affirmative evidence disclosed on this record. Vacheron admits that the Atmos clocks are distinguishable from Masters' by their mechanism, and claims secondary meaning only in the design. The cases are clear that imitation is not actionable unless there is a *secondary meaning attached to the design and* there is a likelihood of consumer-confusion. Mere failure of proof as to the consumer-confusion alone might not be enough to support a finding of bad faith, but all the facts of which defendant had actual knowledge before bringing the state court actions clearly show that under well established principles of the law there could not possibly be a secondary meaning since there are two independent sources of supply—Cartier and Le Coultre—to either of which the Atmos design might point.[16] Moreover it was shown that even as to the clocks marked "Le Coultre" the public might look to two apparently different sources, Vacheron and Longines. All of these facts were well known to Vacheron. Even allowing for different readings of the law, it is impossible to excuse Vacheron on the grounds of an innocent mistake in view of the great number of cases holding that a secondary meaning cannot attach to a design which can be attributed to two possible sources.

I find accordingly that Vacheron acted in bad faith and thus unfairly competed with the plaintiff, in harassing the latter's customers by suits and threats thereof. Vacheron therefore is liable for whatever damages, if any, Masters sustained by reason of such suits and threats thereof, and the latter is entitled to a judgment therefor in such amount as the proof hereafter to be taken shall show. On the settlement of the decree to be entered herein, counsel will be heard as to the manner and time of taking such proof.

Settle proposed decree on notice.

16.    See cases cited footnotes 3 & 10, supra.